## ANN ARBOR CONSTRUCTION CO. v. RUSS.

1. Automobiles—Intersection Collision—Trucks—Speed.

In nonjury action arising from collision between plaintiff's southbound transit concrete mixer truck and defendant's eastbound gravel truck at a highway intersection, evidence *held*, not to have borne out trial judge's statement that plaintiff's truck was going between 4 and 5 miles an hour.

2. Trial—Nonjury Case—Credibility of Witnesses.

In a nonjury action at law the trial judge determines the credibility of witnesses.

3. Automobiles—Intersection—Speed—Contributory Negligence.

Where plaintiff's trucker, coming on a stop highway in broad daylight, mistakenly believes he can cross a through highway on a slant before defendant's rapidly oncoming truck thereon reaches him and does not stop but proceeds at speed of 4 miles an hour, without warning of a horn, straight into path of defendant's truck which approaches without change of speed, and there are no extenuating circumstances, plaintiff's trucker is guilty of contributory negligence as a matter of law.

---

Contributory negligence as a matter of law, see 2 Restatement, Torts, §§ 432, 463, comment b, § 464, comment a, §§ 465, 466, comment g;

Contributory negligence of plaintiff sufficient to bar recovery, see 2 Restatement, Torts, §§ 467, 475(a); standard of conduct defined, see 2 Restatement, Torts, §§ 283–285.

Appeal from Washtenaw; Sample (George W.), J. Submitted June 8, 1945. (Docket No. 63, Calendar No. 43,096.) Decided October 8, 1945.

Case by Ann Arbor Construction Company, a Michigan corporation, against H. Russ for damage to its truck resulting from an accident at an intersection. Judgment for plaintiff. Defendant appeals. Reversed without new trial.

*Burke, Burke & Smith* and *Franklin C. Forsythe,* for plaintiff.

*Roscoe O. Bonisteel* and *J. Don Lawrence,* for defendant.

Butzel, J.    At about noon on a clear day in June, 1943, the driver of plaintiff's truck was proceeding in a southerly direction down Wiard road, east of the city of Ypsilanti, Michigan, toward the southerly portion of the Ecorse road. The Wiard road running north and south is an inferior road, but of sufficient width to accommodate two passing cars. There was a gate across Wiard road where it entered the Ecorse road but it was opened and fastened back. It was possible to close off the road. The Ecorse road is a boulevarded and paved double highway with a very wide plot in the center dividing the two portions of the road. The northerly portion is used exclusively for westerly bound traffic and the southerly portion for traffic going east. Near the Wiard road, as it continues beyond the south line of the southerly portion of the Ecorse road, there is a cut-off, consisting of a three-lane highway, that also leads at an angle in a southerly but different direction. The southerly portion of the Ecorse road is a four-lane highway 40 feet in width. The two

portions of the Ecorse road are master highways
running east and west and accommodate heavy traf-
fic going between Detroit and Ypsilanti. The
Wiard road does not run at a right angle with and
across the southern portion of the Ecorse road but
at a wider angle so there is a distance of 60 feet
between the northerly and southerly lines abutting
on the Ecorse road, although the southerly portion
of the Ecorse road is only 40 feet wide. In refer-
ring to the Ecorse road, we shall refer exclusively
to the southerly portion or avenue that accommo-
dates the traffic going east. For convenience, we
refer to the four lanes of this southerly portion as
lane 1, the most southerly 10 feet of the road, lane 2
consisting of the next 10 feet adjoining, and lanes
3 and 4 the next 10 feet respectively.

Plaintiff's driver was driving a General Motors
Truck built in the late twenties. It had been over-
hauled, repaired and was in good condition. It had
a transit mixer mounted on it and was used to carry
paving material. The truck with equipment
weighed approximately 8 tons without the mixture
it was carrying. There is an incline with a fairly
steep grade on Wiard road where it reaches the
southerly portion of the Ecorse road. Plaintiff's
driver claims that he came to a full stop from 6 to 12
feet before he drove up the incline. Just as he
started he looked down the Ecorse road and saw de-
fendant's Ford truck, which was also heavily loaded
with gravel. It was coming from the west and had
reached a viaduct between 900 to 1,000 feet to the
west from the Wiard road. Plaintiff's driver testi-
fied that he thought he had time to drive his truck
across the road before defendant's truck would
reach the intersection, and he placed the truck in
"creeper" gear as he started to cross. It took him
three or four seconds to get the car started. His

car was on the incline, the front about three feet higher than the rear. However, plaintiff's driver did not see defendant's truck approaching until he started his truck up the incline. When after a few seconds he finally started, he was going less than four miles an hour, for in order to get up a speed of four miles an hour on a motor of that age, he would have to have the motor warmed up, in gear, and going as fast as it could go. He claimed he had the accelerator of the truck right down to the floor board. Although he saw defendant's truck approaching at all times, he did not stop even though he could have stopped within a distance of 10 feet. In the meantime, defendant's driver was rapidly approaching without slackening his speed.

The case was heard without a jury. The trial judge stated at the end of the disputed testimony that plaintiff's truck was going between 4 and 5 miles an hour and that would make the speed of defendant's truck between 48 and 60 miles an hour. The testimony does not bear out this statement for according to the admission of plaintiff's driver, he was going less than 4 or 5 miles an hour, its maximum speed, until he got his truck going at this speed. In figuring that defendant's truck must have been going from 48 to 60 miles an hour, the judge also arrived at this conclusion from the fact that when the two trucks collided, defendant's truck, on striking that of plaintiff just behind the cab, shoved it 50 feet sideways along the road. Defendant's driver claimed that he was going only 35 miles an hour and that he did not see plaintiff's truck until he was within 15 or 20 feet from it, and that it was crossing the highway at a very rapid speed. Plaintiff's driver admitted that he did not blow the horn of the truck when he started or proceeded at a slant across the road so as to warn defendant's driver. The only witnesses to the accident were the

respective drivers. There were no obstructions or traffic that prevented a full view by either driver. Defendant's driver was experienced and subsequently drove a truck for the transportation department of the army and at the time of the trial was in the Army Air Force communications system.

Evidently the judge accepted the testimony of plaintiff's driver *in toto* and rejected that of defendant. He made no allowance for the discrepancies in plaintiff's testimony. Plaintiff's driver claims that he thought defendant's driver was going to make a turn into Wiard road. At the trial plaintiff's driver testified in much detail that a railroad track ran between the east and west bound lanes of Ecorse road and there was a depression in the Wiard road before coming to the railroad tracks. He stated he stopped for a switch engine and a couple of cars. During the recess, however, he went to the scene of the accident, and after the recess, he testified that there were no railroad tracks between the two lanes of the Ecorse road. While plaintiff's driver wavered so much in his testimony that it became rather difficult to form a precise picture of his version of just what occurred in the short interval, were this not a law case we would express considerable doubt as to his credibility. There is no question but that he saw defendant's truck approaching and he could have stopped, as he saw it approaching nearer when he got on the Ecorse road. He, however, continued without stopping and the accident occurred. Had he observed the duty to give a warning with his horn, defendant's driver might have seen him and avoided the accident, for the latter did not see plaintiff's truck until he was very close to it. He was watching the three-lane cut-off from which cars might be coming, not the Wiard road, an inferior road. At the last moment he saw plaintiff's truck and to avoid a collision he did try to swerve his car

and first turned his car into lane 3 and then came back to lane 2, and then into lane 1 where the accident occurred. However, there is no claim of subsequent negligence. We recognize the rule that the judge had the right to determine the credibility of witnesses. However, accepting plaintiff's testimony as true, we hold that plaintiff's driver was guilty of negligence as a matter of law. Even if he did not wait until defendant's truck had passed Wiard road, he should have stopped his truck when it got onto the southerly portion of Ecorse road. Under all circumstances, he should have blown his horn to warn defendant's driver, as he was crossing on a slant.

The judge held that defendant was negligent and not entitled to recover under his cross-declaration. Defendant does not appeal from that part of the decision which denies him recovery against plaintiff. He does claim, however, that plaintiff is guilty of contributory negligence as a matter of law.

We have had a number of similar cases within the last few years. *Lodato* v. *Campbell*, 284 Mich. 217; *Miller* v. *City of Detroit*, 308 Mich. 611. In *DiMatteo* v. *Smith*, 309 Mich. 640, we quoted with approval from *Stuck* v. *Tice*, 291 Mich. 486, as follows:

"Normally, under conditions such as these, when two cars collide on a bright clear day at the intersection of thoroughfares of equal importance, both drivers are to blame."

The facts in all the cases set forth in the briefs differ but the general rule remains the same. There are exceptions where one of the drivers suddenly accelerates his speed or without any reason changes the direction of his car. Plaintiff's truck was approximately 22 feet long and even in a slanting direction it covered more than two of the 10-foot strips of the 40-foot road.

In *DeCoopman* v. *Hammond*, 279 Mich. 619, plaintiff was denied recovery in an intersection case that happened at nighttime where there were two cars approaching. Plaintiff saw the lights of defendant's approaching car and estimated the distance as from 600 to 900 feet away and thought he had time to cross ahead of it and started his car without looking again. He was just over the center of the traffic lane when defendant's car struck plaintiff's car. The court said:

"If defendant was exceeding the speed limit, as claimed by plaintiff, such fact cannot be held an excuse of plaintiff's want of reasonable care."

Plaintiff attempts to distinguish all the cases heretofore decided from the present one. There is not any doubt that they can be so distinguished but if the driver of plaintiff's car coming from an inferior road in a mistaken belief that he can cross the master highway or boulevard before defendant's rapidly-oncoming car reaches him, does not stop, as the defendant's car keeps getting nearer, but instead proceeds at the rate of four miles an hour, the maximum rate of speed his car is capable of making in the gear in which it was being operated, and defendant's car approaches without any change of speed while plaintiff's car is driven without warning of a horn at a slant straight into the path of defendant's oncoming car, and there are no extenuating circumstances, plaintiff's driver is also guilty of negligence as a matter of law, and, therefore, plaintiff cannot recover.

Judgment reversed without a new trial. Costs to defendant.

STARR, C. J., and NORTH, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. The late Justice WIEST took no part in the decision of this case.