PHILLIPS v. MARTEN.

Automobiles — Negligence — Pedestrians — Contributory Negli-
gence—Evidence—Safety Zones—Skidding on Wet Streetcar
Tracks.

Findings of jury that plaintiff pedestrian was free from con-
tributory negligence and that defendant motorist was negligent
was supported by testimony that in her northbound passage
from one safety zone to another midway on a street 90 feet
wide, located some 15 feet apart on either side of east and
west streetcar tracks and lighted with caution signals, plaintiff
first saw defendant's car approaching about 180 feet to the east
as she left southerly safety zone, that had he kept his then
course he would have passed north of the northerly safety zone,
that as she proceeded he swerved, came onto the wet tracks,
skidded and struck plaintiff before she reached the northerly
fourth rail, since she was not bound to anticipate such change
of course on his part and subsequent skidding and was unable
to return to the southerly safety zone because eastbound traffic
which had stopped for her and had started up behind her and
although there is testimony she was plainly visible, defendant
did not see her until about 10 or 12 feet from her, such testi-
mony having presented question for determination by the jury.

Appeal from Wayne; Maher (Thomas F.), J.
Submitted April 11, 1951. (Docket No. 19, Calendar
No. 44,946.) Decided October 1, 1951.

Case by Wanda Phillips against Lee Earl Marten
for damages suffered when she was struck by de-
fendant's automobile. Verdict and judgment for
plaintiff. Defendant appeals. Affirmed.

References for Points in Headnotes
5 Am Jur, Automobiles §§ 293, 450, 657, 658.

*W. J. McBrearty,* for plaintiff.

*Davidson & Kaess (George H. Gotshall* and *Richard K. Amerson,* of counsel), for defendant.

REID, C. J. Plaintiff brought this action to recover damages for personal injuries sustained by her by reason of her being struck by defendant's automobile while driven by him. From a judgment on the verdict for plaintiff and denial of a motion for a new trial, defendant appeals.

Around 6 p.m. on the evening of November 7, 1947, plaintiff, a 37-year-old secretary and bookkeeper, was attempting to cross east Jefferson avenue in Detroit from the south side to the north at a point opposite the east sidewalk of Seyburn avenue. There was no traffic light at the intersection. Seyburn avenue runs into Jefferson avenue from the north and stops. Jefferson is 90 feet wide at that point and there are 2 streetcar tracks on Jefferson to accommodate east- and westbound streetcar traffic. Directly opposite each other are 2 protected safety zones 90 feet in length. For convenience sake at the trial, the rails of the streetcar tracks were numbered 1, 2, 3, and 4, running from south to north.

After leaving the south curb, plaintiff arrived safely within the confines of the eastbound safety zone located just south of the eastbound tracks. Her path would have taken her from the west end of the eastbound zone to a point inside the west end of the westbound zone. The streetcar rails are 5 feet apart and therefore the distance between one zone to the other is the width of the car tracks plus a few feet, or approximately 15 feet plus 5 feet. Before she left the eastbound zone she looked to the east, to see if there was any traffic westbound which would interfere with her crossing. At that time there was only one car approaching from the east which, according

to her testimony, was north of the northerly safety zone and not then traveling directly toward her. That westbound car was the defendant's. He was driving west and a little later, angled toward the streetcar tracks and about 90 feet east of the east end of the 2 safety zones. Plaintiff was then at the west end of the 90-foot zone and therefore 180 feet west of the oncoming automobile. Before she left the protection of the eastbound zone all eastbound automobiles on the streetcar tracks stopped 2 or 3 feet west from her to permit her to cross.

According to the plaintiff, the defendant's car had been traveling on a course that would, if continued, bring the car on the north side of the westbound safety zone. Plaintiff testified:

"I would be somewhere between the first rail, which would be on the south side of Jefferson and the third rail, which would be the rail that would take me toward the Boulevard. Then I saw this car swerve out onto the track, coming from the east, going west. When I first saw it he was approaching the westbound track. So I continued to cross the street toward the safety zone that would be going north.

"Q. What did you do as far as watching?

"A. Well, I continually kept looking east to see if it was all right for me to go ahead.

"Q. When did you know you were going to be struck? Did you continue to watch this car as it came out from behind the zone?

"A. That is right. I watched him constantly because I saw that he was on the track and it was just a matter of who would get there first, so when he started to get tangled up on the wet track, I made an attempt—

"Q. What do you mean by that, when he started to get tangled up, what happened?

"A. Well, he skidded. The tracks were wet and when he approached the westbound rail, his car

skidded and skidded right into me and threw me toward the southwest side of the crossing onto another automobile.

"*Q.* Of another automobile, in which direction?

"*A.* The car would be going east.

"*Q.* What happened when you hit that car?

"*A.* Then I guess I bounced off of that car into the wet street between the westbound rail and the northwest corner of the crossing. *   *   *

"*Q.* When you left rail No 1 were you in motion? Did you walk right straight across?

"*A.* I continued to look east as I was walking, yes.

"*Q.* You looked towards the east; that would be this direction?

"*A.* That is right.

"*Q.* And what did you see?

"*A.* I saw a car pull out from the lane of traffic that was traveling west back of the safety zone. That would be the end of the westbound zone.

"*Q.* It would be over here somewhere?

"*A.* Yes, sir, and it swerved onto the westbound car track rails.

"*Q.* And at that point you were somewhere between rail No 1 and rail No 3?

"*A.* I saw him coming, yes, sir.

"*Q.* Somewhere between rail No 1 and rail No 3?

"*A.* He wasn't on the track yet. I saw him swinging out when I was crossing."

According to the defendant, he was traveling on the south side of the westbound zone, in the car tracks. Plaintiff testified that when the defendant's car reached a point 90 feet or so east of the zone it altered its course from the main travelled course of westbound Jefferson traffic toward the car tracks. Plaintiff was then between rails Nos. 2 and 3. She kept her eyes constantly on the first oncoming car. Plaintiff claims that the wheels of defendant's car when it struck the wet tracks skidded and continued to skid into her after she had crossed the fourth rail

and was between that rail and the westbound safety zone.

The safety zones had flasher lights that indicated "caution." The defendant knew, approaching the zones, that there was danger of encountering pedestrians in the zones through which he intended to drive.

Plaintiff wore a bright red coat. She was seen by an eastbound motorist 100 feet away. The defendant driver testified he did not see her until he was 10 to 12 feet from striking her.

The plaintiff was injured as a result of this accident. Her injuries are not disputed.

Plaintiff's testimony includes her statement that the right-front corner of defendant's car struck her. But her own statement that defendant's car, "threw me toward the southwest side of the crossing onto another automobile * * * going east," is highly indicative that it was the left and not the right-front corner of defendant's car that struck her, which latter proposition is in accordance with the testimony of several witnesses.

Plaintiff's cause of action is based on her testimony that as she stepped from her last place of safety she saw defendant's car 180 feet away and going westerly on a course which would take his car northerly of the northern safety zone and that thus the defendant's car was not headed for the area between the 2 zones and that defendant changed his course into the area on which plaintiff was moving between the 2 safety zones at a time when the eastbound traffic had begun to move east, thus closing any possible retreat, and that defendant's car after this change in its course skidded and struck her.

Defendant emphasizes his claim that plaintiff was guilty of contributory negligence, and claims that plaintiff voluntarily left a place of safety, started

across the car tracks and walked into the left-front corner of his car.

Available for the jury as a basis for their finding that plaintiff was free from contributory negligence there is testimony supporting the inference that she formed a reasonable judgment that she could cross safely when she saw defendant's approaching car being driven in a direction that would avoid the area between the 2 safety zones, that after plaintiff left her place of safety, defendant changed his course and that the change of course and skidding of defendant's car on the wet rail was the cause of her being struck and that without such swerve and skidding of defendant's car, plaintiff would have crossed safely.

Plaintiff testified she had defendant's car in constant view in attempting to cross and had formed a fair judgment that she had time to cross safely, but that defendant's car swerved and then skidded. It would be a jury question whether the swerve and skidding caused her to be struck. Plaintiff was not bound to anticipate that the direction of defendant's car would be changed to cause the car to go through the area between the 2 safety zones and afterwards to skid.

Defendant does not assert any claim that the alternative and inconsistent claim of subsequent negligence of defendant is not properly available to plaintiff. Plaintiff pleaded subsequent negligence and the court in his charge submitted that question to the jury. Defendant makes no claim that submission of the claim of subsequent negligence was erroneous.

There was testimony from which the jury could draw a fair inference that plaintiff was in a place of recognizable danger at a time when defendant changed his course and should have seen and recognized her peril and that defendant then still had

sufficient time to stop his car, the plaintiff being then precluded from retreating to her former safe place because eastbound traffic started up behind her when she stepped out of the path of eastbound traffic to cross. Defendant did not see her until he was 10 or 12 feet from striking her, though there is testimony to show that she was plainly visible.

We cannot say which of plaintiff's theories the jury accepted but there was testimony which would fairly sustain a finding on the part of the jury that plaintiff was free from negligence and that defendant was negligent and that his negligence was the sole proximate cause of the accident. Our decision in *Staunton* v. *City of Detroit,* 329 Mich 516, decided March 1, 1951, is not without some importance as indicating the duty of the driver in the instant case.

Defendant filed a motion for judgment *non obstante veredicto,* on the ground that defendant as a matter of law was not negligent, and that plaintiff was guilty of contributory negligence as a matter of law. While the record does not set forth the trial court's denial of the motion for judgment *non obstante veredicto,* defendant's appeal recites such denial and we must consider that the trial court made such order, in which order we concur. The defendant was not as a matter of law not guilty of negligence and plaintiff was not as a matter of law guilty of contributory negligence.

The judgment and order appealed from are affirmed. Costs to plaintiff.

BOYLES, NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.