YACKSO *v.* BOKULICH.

1. AUTOMOBILES.— INTERSECTIONS — CONTRIBUTORY NEGLIGENCE — SPEED—OBSERVATION,
    Driver of plaintiff's eastbound car was guilty of contributory negligence as a matter of law, where he had observed, while 25 feet west of intersection of streets each .paved 32 feet wide, that southbound defendant was 180 feet to the north and approaching at speed of 35 to 40 miles an hour and continued at such speed until driver of plaintiff's car was 3 feet west of west curb line and latter then accelerated his speed to 15 miles an hour in an unsuccessful effort to precede defendant through the intersection, the collision taking place when two thirds the way across north and south street, since plaintiff's driver could and should have stopped had he continued to make proper observation to his left.

2. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE.
    Testimony must be construed· in plaintiff's favor as strongly as reasonably possible on defendant's appeal from denial of his motion for a directed verdict.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 5 Am, Jur, Automobiles §§ 289 *et seq.,* 715.
[2] 3 Am Jur, Appeal and Error § 947.

3. AUTOMOBILES—INTERSECTIONS.
  Normally, both drivers are to blame when 2 cars collide on
    a bright clear day at the intersection of thoroughfares of
    equal importance, where there was no traffic or obstructions
    to interfere with their driving.

Appeal from Wayne; Weideman (Carl M.), J. Submitted April 15, 1952. (Docket No. 72, Calendar No. 45,426.) Decided May 16, 1952. Rehearing denied June 27, 1952.

Case by Stella Yackso against Peter Lester Bokulich for damages resulting from automobile accident. Verdict and judgment for plaintiff. Defendant appeals. Reversed and remanded for entry of judgment for defendant.

*Allen H. Blondy,* for plaintiff.

*Snider & Feikens (Robert E. Dice,* of counsel), for defendant.

CARR, J. This case resulted from a traffic accident occurring in the city. of Detroit on April 26, 1951, at about 4 o'clock in the afternoon. At that time plaintiff's automobile, a 1951 Dodge club coupe, operated by her brother-in-law Andrew Yackso, was proceeding in an easterly direction on Nashville avenue. The weather was dry and clear. The defendant, driving a 1951 Pontiac automobile, approached Nashville avenue from the north on Westphalia. The vehicles of the parties came in contact in the intersection, as a result of which plaintiff's car was damaged. Suit to recover the cost of the necessary repairs to the vehicle was brought in the common pleas court for the city of Detroit.

On the trial of the case plaintiff introduced the testimony of the driver of her automobile, Andrew Yackso, and rested. Thereupon counsel for defend-

ant moved for a directed verdict. The motion was denied, the case was submitted to the jury, and a verdict returned in the sum of $1,215.32, which amount was stipulated as covering the damage sustained by plaintiff's vehicle. Defendant's motion for a new trial was denied. The cause was appealed to the circuit court of Wayne county where it was submitted on a transcript of the record taken in the common pleas court and on the briefs and oral arguments of counsel. The circuit judge hearing the matter came to the conclusion that the issues in the case were properly submitted to the jury in the common pleas court and that the motion for a directed verdict, based on the alleged contributory negligence of the driver of plaintiff's automobile, was properly denied. Judgment was accordingly entered in the circuit court for the said sum of $1,215.32. Defendant has appealed, assigning as the sole reason therefor:

"That the record shows the plaintiff's driver to be guilty of contributory negligence as a matter of law, and the trial court erred in failing to grant defendant's and appellant's motion for a directed verdict, and the circuit court, acting as an appellate court erred in affirming the trial court."

The driver of plaintiff's car testified on his direct examination that in approaching the intersection where the accident occurred he decreased his rate of speed from 20 or 25 miles an hour to approximately 10 miles an hour. He stated further that when about 25 feet from Westphalia avenue he looked to his left, noted that defendant's car was approaching approximately 180 feet north of the intersection, and judged its speed to be about 35 or 40 miles an hour. It was his claim that he kept glancing at defendant's vehicle until he reached a point approximately 3 or 4 feet from the intersection, that he then concluded that he could cross Westphalia in safety, and under-

took to do so, accelerating the speed of his car from about 10 miles per hour to about 15 miles per hour at the time of the impact. He was struck by defendant's automobile about two-thirds of the distance across Westphalia. The record discloses that the thoroughfares were each 32 feet in width and paved, and that the intersection where the accident happened was a so-called "uncontrolled or open intersection." The witness stated further that when he observed defendant's car it was proceeding in the center of Westphalia, "partly on one side and partly on the other."

On cross-examination the witness testified in part as follows:

"*Q.* Mr. Yackso, if I understand your testimony clearly, on direct you testified that when you were approximately 3 feet back of the west curb of Westphalia you made an observation of the vehicle; that you made an observation of the defendant's vehicle?

"*A.* Yes.

"*Q.* And that you continued to observe him at that point for a period of 1 to 2 seconds, is that correct?

"*A.* I made my first observation 25 feet back. I observed him all the way until I got there.

"*Q.* In other words, it was 1 or 2 seconds from the time you made your first observation until you made your second observation?

"*A.* I kept glancing at him all the time.

"*Q.* How many glances can you take in 1 or 2 seconds?

"*A.* When I first saw him, I kept looking to judge his speed. When I got to that point, I looked to the right to make sure there was no automobile.

"*Q.* How fast were you going from the time you made your first observation, until the time you made your second?

"*A.* About 10 miles an hour.

"*Q.* In other words, you were going about 20, and slowed to 10?

"*A.* Yes.

"*Q.* You kept looking until you were 3 feet back of the intersection?

"*A.* Sure, just about that.

"*Q.* All during that time, the defendant's vehicle, you state, was going 35 to 40 miles an hour?

"*A.* Yes.

"*Q.* He didn't reduce his speed?

"*A.* No.

"*Q.* According to your testimony, he was right on the center, or partly over on the easterly side of the street, right of Westphalia?

"*A.* That's right. * * *

"*Q.* Mr. Yackso, from the time that you were 25 feet back from the intersection, until the time that you reached a point 3 feet back from the intersection, did you observe whether or not the defendant's vehicle had reduced its speed?

"*A.* No, sir.

"*Q.* It did not reduce its speed?

"*A.* No, sir.

"*Q.* Did it increase its speed?

"*A.* No, sir.

"*Q.* Maintained a steady 35 to 40 miles an hour speed?

"*A.* Yes.

"*Q.* All during this time, you could have avoided the accident if you had stopped, is that correct?

"*A.* Possibly, yes.

"*Q.* Going at 10 miles an hour, how far, would you say, in feet, would it take you to stop your vehicle?

"*A:* Possibly 15 feet; not even that. * * *

"*Q.* You assumed he was going to slow up?

"*A.* Slow up, and get back on the right side of the road.

"*Q.* He had done nothing on which you could base that assumption; he hadn't slowed up before?

"*A.* No, but he had 130 feet to do it in."

The witness did not claim that after making his observation 3 or 4 feet from the intersection he there-

after continued to watch the approach of defendant's car, or that he made a further observation until the instant of the impact. It is a fair conclusion from the testimony that he did not do so. His observation previously made disclosed that defendant was driving at a rate of speed from 35 to 40 miles an hour, with part of his vehicle on the wrong side of the center line of Westphalia. With nothing to indicate that defendant would slow up or change the course of his car, the witness assumed that he would do so and proceeded into the intersection. Admittedly he could have stopped within a distance of a few feet. Had he noted after entering the intersection that defendant was continuing to approach at his prior rate of speed and without changing his course he might have avoided the impact by stopping or by reasonably accelerating the speed of his own vehicle.

Under the circumstances presented, we think the exercise of due and proper care for his own safety and for the safety of plaintiff's property required that Mr. Yackso continue his observations as he entered the intersection, and that he was not justified in relying on the assumption that defendant would avoid a collision. We have in mind the rule requiring that in determining the question at issue here the testimony must be construed in plaintiff's favor as strongly as reasonably possible. Nevertheless, we think that the record clearly indicates that plaintiff failed to establish freedom from contributory negligence on the part of the driver of her vehicle, and that he was guilty of contributory negligence as a matter of law.

While each case of this nature must be determined on the basis of the factual situation involved, prior decisions of this Court have established certain principles and tests that may be applied in determining an issue of contributory negligence. Thus in *Boerema* v. *Cook,* 256 Mich 266, in sustaining a di-

rected verdict for the defendant on the ground of the contributory negligence of the plaintiff, it was said:

"His negligence consisted in failing to keep a look-out as he was crossing to see if he could continue on in safety. The requirement that one must use reasonable care for his own protection was not satisfied with the single observation which plaintiff made before entering the intersection. The situation was such as to call for further observation. Throughout the distance which he traveled before the collision his view was unobstructed. If he had looked again he would have seen the defendant nearby bearing down on him at a high rate of speed. If he had looked he would have realized his danger in time to have avoided the collision either by accelerating his speed or reducing it. In view of the circumstances, with which he was familiar, it must be held that he did not use ordinary care for his own safety and cannot recover unless the defendant was guilty of subsequent negligence."

Likewise, in *Sonfilian* v. *Wiedman,* 291 Mich 697, it was said:

"In many cases we have held that one is not free from contributory negligence who observes an automobile coming on the intersecting street and then proceeds to cross without giving further heed to the oncoming vehicle until the instant before or at the time of collision, *Smith* v. *Ormiston,* 242 Mich 600; *Koehler* v. *Thom,* 285 Mich 593; and that it is incumbent upon both drivers in approaching an intersection to use care commensurate with the obvious circumstances regardless of which had the favored road. See *Benson* v. *Tucker,* 252 Mich 385.

"In the case at bar, plaintiff first saw defendant's car when it was approximately 600 feet away. Plaintiff continued on into the intersection and traveled a distance of about 6 feet into the intersection when he saw defendant approaching about 300 feet away,

and traveling at a high rate of speed. At this point, plaintiff had a distance of 30 to 45 feet to travel in order to reach a place of safety. At the rate of speed plaintiff had been traveling, he must have known or should have known the possible danger in attempting to pass in front of a rapidly moving vehicle. His failure to use the proper precautions under the circumstances makes him guilty of contributory negligence and precludes his recovery."

In *Davidson* v. *City of Detroit*, 307 Mich 420, the holding of the trial court that plaintiff was guilty of contributory negligence as a matter of law was sustained. The proofs in the case disclosed that plaintiff desired to board a streetcar that was approaching an intersection, and that she gave the customary signal, but that the motorman either failed to see it or ignored it. She relied on the belief that the motorman had seen her and would slow down. In commenting on the situation, it was said:

"Plaintiff took the chance of going into a place of obvious danger without taking the precaution of observing whether she could cross in safety.

" 'A reasonably prudent man will not take a chance of streetcars slowing up to let him cross a street.' *Public Administrator of the State of Michigan* v. *City of Detroit*, 234 Mich 314.

"When plaintiff approached the car track and gave the usual signal of her desire to become a passenger, she had the right to assume that the streetcar would stop. However, this did not obviate the necessity of taking usual precaution before attempting to cross the track in front of the streetcar that (as plaintiff admits) showed no evidence of slowing down, and plaintiff had no right to continue the presumption that the car would stop when she observed that it was not slowing down. *Devore* v. *Rapid Railway Co.*, 235 Mich 405. Plaintiff claims that this was a customary streetcar stop, and that plaintiff had the right to rely on the motorman observing the custom.

We do not find from the record that this intersection was a customary stopping place except when the streetcar was stopped on signal. The motorman was negligent in failing to observe plaintiff's signal, but otherwise was not supposed to stop."

In support of the conclusion a number of prior decisions were cited with approval. A like result was reached by a majority of the Court in *MacDonald* v. *Skornia,* 322 Mich 370, where prior decisions were considered and discussed in support of the holding that the plaintiff was guilty of contributory negligence as a matter of law because of his failure to maintain a proper outlook for his own safety. See, also, *Francis* v. *Rumsey,* 303 Mich 526.

As before noted, the accident here in question occurred in daylight. The weather was clear. The record does not disclose that at the time other vehicles were traveling either street in proximity to the intersection. Each driver had an unobstructed view. The observation made in *Stuck* v. *Tice,* 291 Mich 486, 489, is pertinent here:

"Normally, under conditions such as these, when 2 cars collide on a bright clear day at the intersection of thoroughfares of equal importance, both drivers are to blame."

In that case there was testimony indicating that plaintiff continued to watch defendants' vehicle as it approached the intersection, and that defendant Tice reduced his speed apparently to make a stop or turn. The situation was distinguished from that involved in *Block* v. *Peterson,* 284 Mich 88, where plaintiff was held guilty of contributory negligence as a matter of law for failing to make observations to ascertain if he could cross the highway in safety after seeing defendant's car approximately 120 feet from the intersection. The Court also referred to *Koehler* v. *Thom,* 285 Mich 593, which is somewhat

analogous on the facts to the case at bar. There the plaintiffs' driver observed defendant approaching the intersection where the collision occurred at a speed estimated at 55 miles per hour. Like plaintiff's driver in the instant case, he saw nothing indicating that defendant was going to stop and he made no effort to stop his own automobile. The judgment of the lower court in plaintiffs' favor was reversed without a new trial on the ground that:

"Under the facts as shown in this cause, plaintiffs' driver with the use of ordinary care could have prevented the accident. His failure to use such care makes him guilty of contributory negligence and precludes his recovery."

See, also, *Ann Arbor Construction Co.* v. *Russ,* 312 Mich 527.

Counsel for appellee cites and relies on *Knoellinger* v. *Hensler,* 331 Mich 197. In that case there was testimony indicating that, following the making of the observations on which plaintiff relied, the defendant increased his speed and drove his vehicle on the left side of the highway. Under such circumstances it was held that the question of the plaintiff's contributory negligence was a matter for determination by the jury. The judgment entered notwithstanding the verdict was therefore reversed. In *Staunton* v. *City of Detroit,* 329 Mich 516, also cited by appellee, the proofs indicated that defendant's bus swerved from its course to pass an automobile that stopped in front of it, and injured the plaintiffs. The factual situations presented in these cases are not analogous to that in the case at bar. In *Phillips* v. *Marten,* 331 Mich 330, there was testimony that after plaintiff had noted defendant's approaching car, and had concluded that she could proceed without danger of being struck thereby, defendant changed his course, and that the injury to

plaintiff resulted from such change and from the skidding of the car on the wet rail of a streetcar track.

In order to entitle her to judgment in the instant case the burden of proof rested on the plaintiff to establish that the driver of her automobile was free from contributory negligence. We think that she failed to sustain that burden. The testimony clearly shows that said driver failed to observe the degree of care that the ordinary careful and reasonable person would have exercised under the same or like circumstances, and he was in consequence guilty of contributory negligence as a matter of law.

The judgment is reversed and the cause remanded to the circuit court with directions to set aside the judgment in plaintiff's favor and to enter judgment for defendant. Appellant may have costs.

NORTH, C. J., and DETHMERS, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.