GILLETT *v.* MICHIGAN UNITED TRACTION CO.

1. NEGLIGENCE—STREET RAILWAYS—PERSONAL INJURIES—CONTRIB-
UTORY NEGLIGENCE—PRESUMPTIONS—EYEWITNESSES.

In an action against a street railway company for personal
injuries caused by a collision between plaintiff's automo-
bile and an interurban car, where plaintiff started from
the curb and drove his automobile in front of the car,
and no witness was able to say whether or not plaintiff
looked to see if a car was coming, and he testified that
his mind was a blank as to what happened, the presump-
tion that, in the absence of eyewitnesses, plaintiff was
free from contributory negligence, *held*, not applicable.

2. EVIDENCE—PRESUMPTIONS—WEIGHT AGAINST EVIDENCE.

A rebuttable or *prima facie* presumption has no weight
as evidence; it may establish a *prima facie* case, but, if
challenged by rebutting evidence, the presumption cannot
be weighed against the evidence.

3. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE— PRESUMPTIONS — EVI-
DENCE—QUESTION FOR JURY.

When direct, positive, and credible rebutting evidence is
introduced, the presumption of due care ceases to oper-
ate; but when circumstantial evidence of doubtful value
is the only rebutting evidence offered, the question should
be submitted to the jury.

4. SAME.

It is only in cases where direct testimony of credible eye-
witnesses as to the negligence of deceased is uncontradict-
ed that the court is warranted in directing a verdict for
the defendant on the ground of decedent's contributory
negligence; if the testimony is contradicted or rendered
improbable by the circumstances, or if the credibility of
the witnesses is attacked, the question must be submitted
to the jury; the evidence to be weighed unaided by the
presumption.

5. SAME—EVIDENCE—DUE CARE—PRESUMPTIONS.

If the jury decide that the testimony tending to show negli-
gence on the part of the deceased has been overcome, the
presumption of due care will still operate.

6. SAME—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS—OVERCOMING PRESUMPTIONS.

The real test as to whether the presumption of due care has been overcome is whether or not evidence tending to show contributory negligence, be it direct or circumstantial, is so conclusive that reasonable and unprejudiced minds could not fail to be convinced that decedent was careless.

7. SAME—EVIDENCE—CONCLUSIVENESS—DIRECTED VERDICT.

Where there was evidence that if plaintiff had looked he would have seen the car coming and realized his danger, from which an inference might properly be drawn that he did not see the car, and that either he did not look, or that he did look but carelessly drove upon the track, and the inevitable conclusion to which all unprejudiced minds must come is that plaintiff was clearly guilty of contributory negligence under the peculiar facts in the case, the trial judge was justified in directing a verdict for defendant.

Error to Calhoun; North, J.   Submitted January 15, 1919.   (Docket No. 36.)   Decided April 3, 1919.

Case by Melvin J. Gillett against the Michigan United Traction Company for personal injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Price & Whiting,* for appellant.

*Sanford W. Ladd* (*Warren, Cady, Ladd & Hill,* of counsel), for appellee.

KUHN, J.   Plaintiff has brought this action to recover damages for injuries received in a collision between his automobile and an interurban car of the defendant company, which occurred on State street in the city of Marshall, under the following circumstances:   Plaintiff had left his automobile standing, facing west, close to the curb on the north side of State street in the block between Madison and Jefferson streets, while he went into Bently's grocery store

on an errand. It was a two-seated Ford car, the top was up, and some, if not all, the side curtains were on. Upon leaving the store, he got into the car and attempted to start, but had some difficulty with his engine, and two young men who happened to be passing stopped and cranked it for him several times before he succeeded in getting under headway. He then immediately turned his car from the curb, making about as short a turn as was possible, and drove directly onto the street car track, where his machine was struck by a west-bound interurban car and carried nearly to Jefferson street. Plaintiff was severely injured by the impact. State street from curb to curb at this point is 66 feet wide, and the distance from the curb to the nearest rail of the street car track is 30.5 feet. Plaintiff testified that he had no recollection whatever of the accident, but that his mind was a complete blank as to what happened from the time he stepped out of the grocery store onto the sidewalk to the time he found himself at home in bed, suffering from his injuries. The testimony varied somewhat concerning the speed of the interurban car, ranging from that given by the motorman of 12 to 15 miles an hour to that of two or three persons who witnessed the accident from the sidewalk or store windows, who estimated it at from 20 to 30 miles an hour. There was a city ordinance limiting the speed at this particular point to 10 miles an hour. All the witnesses agreed that it was a wet, slippery morning. There was a conflict in the testimony as to how far the car traveled after the collision before coming to a stop. The accident happened directly in front of Hewlett's jewelry store, the first store west of Bently's grocery. The motorman insisted that he stopped with the front of his car in the middle of Jefferson street. This, according to the measurements given on the blue-print, Exhibit A, would make the distance about

150 feet.   Other witnesses stated that the *rear* of the car was either in the middle, or even with the farther curb, of Jefferson street.   If this is true, the distance must have been from 210 to 230 feet, as the interurban car was shown to have been 61 feet in length.   The testimony is conflicting as to whether the motorman sounded the gong before crossing Madison street, but nearly all the witnesses testified that he sounded a warning whistle while his car was crossing Madison street or a few feet beyond and as soon as it became apparent that plaintiff was going to try to cross the street.   The automobile was going at a speed of 4 or 5 miles an hour, and apparently made no effort to turn aside, or to stop, or to increase its speed.   None of the witnesses were able to testify whether or not the plaintiff, either at the time he started from the curb or at any subsequent moment before the collision, looked back to see if a car was coming.   The trial judge first submitted the case to the jury, but, when it became apparent that the jurors could not agree, called them back and directed a verdict for the defendant on the ground that plaintiff had failed to meet the burden resting upon him to prove that he was in the exercise of due care.

It is the claim of the plaintiff that the presumption of due care, which we have held may sometimes be applied in cases where the plaintiff was killed by the accident and there were no eyewitnesses, should be held also to apply to a case such as the present one where the plaintiff survives, but has no recollection whatever of the accident, and where there are no witnesses who can testify as to whether or not he fulfilled the duty of looking and listening which the law imposed upon him.   This would present an interesting question if this were a case where the presumption relied upon would have operated, had the plaintiff been killed by the collision.   But, in our view of the law,

even if the plaintiff had met his death in the accident and an action been brought by his personal representative against the defendant for negligently causing his death, we do not think, under the facts here shown, that such a case could properly be submitted to the jury, but are of the opinion that the court should hold, as a matter of law, that Mr. Gillett was guilty of contributory negligence. We think the fallacy of the argument of plaintiff's counsel lies in the fact that they assume that if it cannot be shown by the positive statement of any witness that the plaintiff did not look and did not listen before attempting to cross the track, it cannot then be said that there was evidence of negligence on his part sufficient to remove the presumption of due care. Such an assumption implies two things: *First*, that in a case where the presumption of due care is invoked, it cannot be rebutted by circumstantial evidence, however strong; *second*, that if it is established that plaintiff looked and listened, his conduct in attempting to cross ahead of the car cannot, under the circumstances, be said as a matter of law to have been negligent. There are decisions which may seem to lend support to counsel's position, and it may be profitable briefly to consider the principles involved and the typical cases upon the subject.

It is now quite generally held by the courts that a rebuttable or *prima facie* presumption has no weight as evidence. It serves to establish a *prima facie* case, but if challenged by rebutting evidence, the presumption cannot be weighed against the evidence. Supporting evidence must be introduced, and it then becomes a question of weighing the actual evidence introduced, without giving any evidential force to the presumption itself. In 1 Elliott on Evidence, § 91, p. 114, it is said:

"It (the presumption) may be directly rebutted by

such evidence, or it may be shown thereby that it was never applicable to the particular facts, for it will be found that presumptions are usually very general in their nature, and lose their force and application when the specific facts of the case are shown;"

—and further (§ 93, p. 116):

"A presumption operates to relieve the party in whose favor it operates from going forward in argument or evidence, and serves the purpose of a *prima facie* case until the other party has gone forward with his evidence, but, in itself, it is not evidence, and involves no rule as to the weight of evidence necessary to meet it.  *  *  *  It is sometimes said that the presumption will tip the scale when the evidence is balanced.  But, in truth, nothing tips the scale but evidence, and a presumption, being a legal rule or a legal conclusion, is not evidence.  *  *  *  It is not probative matter, which may be a basis of inference and weighed and compared with other matter of a probative nature."

See, also, 4 Wigmore on Evidence, § 2491; 2 Best's Principles of Evidence (Am. Ed.), §§ 298, 299; note in 33 L. R. A. (N. S.) 1085; Thayer's Preliminary Treatise on Evidence (1898), Appendix B, p. 551. A discussion of this subject will also be found in *Baker* v. *Delano*, 191 Mich. 204, at p. 208.

But while this is true, it does not follow, in the case of the particular presumption here under consideration, that immediately upon the introduction of any evidence whatsoever tending to show negligence on the part of the deceased the presumption vanishes and that the burden then rests upon the plaintiff of establishing by affirmative evidence that decedent exercised due care in every respect. A distinction has been recognized between direct, positive and credible rebutting evidence and mere circumstantial evidence having but a slight or inconclusive tendency to rebut the presumption. When direct, positive and credible rebutting evidence is introduced, the presumption ceases to

operate; but when circumstantial evidence of doubtful value is the only rebutting evidence offered, the question should be submitted to the jury, and if they decide that the circumstantial evidence should be disregarded, the presumption is still sufficient to establish plaintiff's case as to the exercise of proper care by the deceased. Moreover, it is only in cases where direct testimony of credible eyewitnesses as to the negligence of deceased is *uncontradicted,* that the court is warranted in directing a verdict for the defendant on the ground of decedent's contributory negligence. If the testimony is contradicted by other witnesses, or rendered improbable by the circumstances, or if the credibility of the witnesses is attacked, the question must be submitted to the jury, but in such case the jury must weigh merely the evidence, unaided by the presumption. If, however, the jury decide that the testimony tending to show negligence on the part of the deceased in the particular claimed has been overcome by other evidence and should be disregarded, the presumption will, of course, if necessary, still operate to establish plaintiff's case as to the care exercised by the deceased. The attempt to rebut the presumption having failed, it still remains in force so far as may be necessary to cover any particulars not touched on by the evidence. There is no reason why an unsuccessful attempt to show the negligence of deceased in some particular respect should place upon the plaintiff the burden of proving by affirmative evidence that the deceased used due care in all respects—a burden which did not rest upon him before the attempt was made.

A case well illustrating the effect of direct rebutting evidence is *Mynning* v. *Railroad Co.,* 64 Mich. 93 (8 Am. St. Rep. 804), where it was said:

"The presumption of law is that the person killed at a crossing did stop, and look and listen, and will prevail in the absence of direct testimony on the sub-

ject.   But where there is affirmative, direct, and creditable testimony that the person injured went upon the track without stopping to look and listen, the presumption is rebutted and displaced. (Citing cases.) Such is the testimony in this case, and there is none to the contrary.   The showing of contributory negligence is much stronger than in *Pzolla* v. *Railroad Co.,* 54 Mich. 273, and we held in that case that the plaintiff was not entitled to recover because of such contributory negligence, and we affirmed the ruling of the court below in taking the case from the jury."

And in the recent case of *Baker* v. *Delano, supra,* it was said:

"We are of the opinion that it is clear that it is the rule in this State that the presumption that a plaintiff is free from contributory negligence can be said to apply only in cases where there is an absence of any direct evidence to the contrary."

And, again, after a review of the testimony in that case:

"We are of the opinion that this testimony makes it clear that there were eyewitnesses of the accident who were able to, and did, give 'direct testimony on the subject,' and that consequently, under the authorities above cited, the presumption relied upon by the plaintiff was removed.   This testimony also makes the conclusion irresistible that if the deceased had stopped, looked, and listened, it would have been a physical impossibility for him not to have been aware of the approach of the engine, no matter whether the bell was being rung or the lights were burning.   *   *   *   We see no escape from the conclusion that the circuit judge was clearly right in holding that the deceased was guilty of contributory negligence."

See, also, *Haas* v. *Railroad Co.,* 47 Mich. 401; *Rhoades* v. *Railway Co.,* 58 Mich. 263; *Matta* v. *Railway Co.,* 69 Mich. 109; *Underhill* v. *Railway Co.,* 81 Mich. 43; *Apsey* v. *Railroad Co.,* 83 Mich. 432; *Stewart* v. *Railroad Co.,* 119 Mich. 91; *Graf* v. *Railway*

*Co.,* 94 Mich. 579; *Schwartz* v. *Railroad Co.,* 153 Mich. 40 (17 L. R. A. [N. S.] 1253) ; *Folkmire* v. *Railways Co.,* 157 Mich. 159 (17 Ann Cas. 979) ; *Gates* v. *Beebe,* 170 Mich. 107.

The rule applicable in a case where there is no direct, positive testimony as to the negligence of the deceased person for whose death the action is brought, but where there is some circumstantial evidence tending to show negligence on his part, is thus stated by Mr. Justice COOLEY in *Teipel* v. *Hilsendegen,* 44 Mich. 461:

"In this case there were no eyewitnesses, and the injury resulted in death. The plaintiff sues as administrator of the person killed. There was some evidence of negligence on the part of the defendant, and there was some ground for an opinion that the intestate was negligent also. But the plaintiff put in such proofs of the attendant facts as were attainable under the circumstances, and from these it was by no means clear that the intestate was in fault at all. There was room for the conclusion that he was not. We think the case ought to have gone to the jury."

A recent case of this kind was *Cinadar* v. *Railway Co.,* 193 Mich. 38. The plaintiff was killed by the accident, and there were no eyewitnesses who saw him immediately before he drove upon the track, though a number saw him before he passed out of view behind a box car. He was familiar with the crossing and knew a train was due. Witnesses who were at the time a block farther away from the approaching train than the deceased, testified that they distinctly heard the noise of the train and its whistle, and the circumstances created quite a strong inference that if plaintiff had stopped the heavy coal wagon he was driving before passing into the danger zone, he must necessarily have heard the approaching train. Mr. Justice STONE, in his opinion, said:

"It can be said that the plaintiff introduced no testimony showing what care and caution decedent exercised in approaching the crossing, nor was it shown whether he stopped his horse and looked or listened. Upon the testimony as the plaintiff left it, the jury might have inferred that decedent approached the track with due care, or at least they might have relied upon the presumption of law above referred to. Was this presumption overcome by evidence? * * * It is decedent's conduct prior to reaching the danger zone, the track, that is material, and it is urged by plaintiff that there is no direct testimony on that point, and that the presumption of law is that he did stop, look and listen. It is the claim of the plaintiff that it was impossible for decedent to have seen the train until he had cleared the extreme westerly side of the box car, and then his horse was on the track. While we consider the question of contributory negligence a close one, we are of the opinion that it cannot be said that the decedent did not exercise the care that an ordinarily prudent man would have exercised under like circumstances, and we think that the question was properly submitted to the jury."

See, also, *McWilliams* v. *Mills Co.*, 31 Mich. 274; *Billings* v. *Breinig*, 45 Mich. 65; *Adams* v. *Iron Cliffs Co.*, 78 Mich. 271 (18 Am. St. Rep. 441); *Jones* v. *Railroad Co.*, 127 Mich. 198; *Schremms* v. *Railroad Co.*, 145 Mich. 190 (116 Am. St. Rep. 291); *Richardson* v. *Railway Co.*, 176 Mich. 413.

In a few cases, however, notwithstanding there have been no eyewitnesses of the accident resulting in death and consequently no direct, positive testimony as to any negligence on the part of deceased, nevertheless the circumstances surrounding the accident as revealed by the evidence have shown so conclusively that it could not have happened without such contributory negligence, that this court has held that the presumption of due care has been entirely rebutted and displaced. A typical case of this kind is *Kwiotkowski* v. *Railway Co.*, 70 Mich. 549. In that case plaintiff's

decedent attempted to cross the railroad tracks at a street crossing with which he was very familiar, on a dark, rainy evening, in front of a rapidly approaching train, with a blazing headlight which lighted the track for at least a block. No one saw the accident. It was said in the course of the opinion, written by Mr. Justice Morse:

"We cannot avoid the conclusion that the deceased did not look up or down the track, as he should have done, after passing the wood-office. If he had so looked, he must certainly have noticed the headlight of this approaching train. If he did look, he must have been careless, and attempted to cross the track when he should not have done so.

"It is true that we held in *Mynning* v. *Railroad Co.*, 64 Mich. 102, that the presumption of law is that the person killed at a crossing did look and listen, in the absence of any showing to the contrary; and we have also held in other cases that, if the evidence on the part of the plaintiff fails to show any contributory negligence on the part of the person killed or injured, he is not required to go further, and negative by direct evidence that he was in fault, as where there are no eyewitnesses this would be impossible. But in this case, although no person saw the deceased after he passed the wood-yard until his mangled body was found beside the track, yet the location of the track is such that the conclusion is irresistible that if Kwiotkowski had simply stopped a moment, or had looked down the track without stopping, he could have seen the headlight of the locomotive, and been warned of his danger in time to have averted it. * * * The inevitable conclusion to which all unprejudiced minds must come, being that the deceased did not look, or, if he did look, took his chances to get across the track when he ought, as a prudent man, to have stopped, the circuit judge was right in directing a verdict for the defendant."

A more recent case of this class, and one very similar to the above in its essential features, is *Guntermann* v. *Railroad Co.*, 168 Mich. 37, where Mr. Justice

BROOKE, in his opinion, after reviewing the salient facts, said:

"Under the facts disclosed, the presumption that decedent acted with due care is swept away, and he should be charged with such negligence as would preclude recovery by the plaintiff. Assuming that the horse was traveling at the rate of 4 miles per hour, and the train at 40 miles per hour, when decedent was 30 feet from the track, the train was but 300 feet away, approaching with its headlight burning, and its engine bell ringing. A verdict should have been directed for defendant."

See, also, *Grostick* v. *Railroad Co.*, 90 Mich. 594.

While the above may serve as a rough classification of the decisions relative to the presumption of due care, it will be seen that the real test in each case is whether or not the evidence tending to show contributory negligence, be it direct or circumstantial, is so conclusive that reasonable and unprejudiced minds could not fail to be convinced that decedent was careless. If there is room for reasonable doubt, the question must be submitted to the jury. And while the jury, in weighing the evidence, may not consider the presumption, yet if, uninfluenced by the presumption, they reach the conclusion that the evidence tending to show decedent's negligence is not entitled to credit and should be disregarded, the presumption may then be considered as remaining in force so far as may be necessary to establish the fact that the deceased exercised proper care in all respects not expressly established by the evidence. It was not entirely displaced, but remained in abeyance pending the jury's reaching this preliminary decision as to the credence to be given the evidence on the particular point in which negligence was claimed.

But aside from the question of the kind and amount of evidence required of the defendant to rebut the presumption under discussion, in a case where it has

once become operative, it is, of course, in all cases a prerequisite to the presumption coming into operation at all that the facts established by plaintiff's proofs show nothing in the nature of negligent conduct on the part of the deceased. As stated in *Teipel* v. *Hilsendegen, supra:*

"He (plaintiff) should put in evidence the facts and circumstances attending the injury, and if these show negligent conduct in the defendant from which the injury followed as a direct and proximate consequence, and do not show any contributory negligence in the plaintiff, a *prima facie* case for a jury is made out. He cannot be required to go further than this in negativing his own fault, and in many cases where there are no eyewitnesses, it would be impossible.

"Nor is it necessary that the absence of contributory negligence should be shown beyond cavil or question. If the circumstances are such that reasonable minds might draw different conclusions respecting the plaintiff's fault, he is entitled to go to the jury upon the facts."

But if the testimony of plaintiff's own witnesses clearly shows the lack of proper care and precaution on the part of the deceased, the presumption then has no opportunity to come into play, and there is therefore no burden cast upon the defendant to introduce any rebutting evidence whatever. Under such circumstances, plaintiff has failed to establish even a *prima facie* case, and the court must direct a verdict for the defendant. This, in our view, is the situation in the case at bar, and it is therefore unnecessary for us to pass upon the question of whether or not the presumption could, under any conceivable circumstances, be held to operate where the victim of the accident survives, but has no recollection of the circumstances attending the accident.

Plaintiff's counsel, however, rely upon the fact that not one of the eyewitnesses could testify as to whether

or not he looked and listened before attempting to
cross the track, and also take the position that, inas-
much as plaintiff's car was at a full stop within the
limits of the traveled portion of the street at the time
that he made the decision to cross, it was not neces-
sary again to bring it to a stop. They insist that the
presumption of due care can be displaced only by "af-
firmative, direct and creditable testimony that the per-
son injured went upon the track without stopping to
look and listen," and there being in this case only in-
direct or circumstantial evidence as to these particular
points, the presumption must be considered as in force
so as to require the submission of the case to the jury
under the rule in *Teipel* v. *Hilsendegen, supra.* We
do not think there is any merit in the contention that
the only kind of direct testimony sufficient to rebut
the presumption is testimony that the deceased did
not stop, or look, or listen. The presumption is broad-
er than that; it is that deceased used due care in every
respect. Any direct testimony, therefore, showing a
failure in any respect to use due care would displace
the presumption. It cannot be disputed that in a case
where the deceased had stopped and looked and lis-
tened, and had then attempted recklessly to cross in
front of the car, his action would be held negligent
just as much as an attempt to cross without looking
or listening. In such a case, in the absence of any
proof on the subject, the presumption would be that
he did not attempt to cross recklessly after looking;
and it is manifest that any direct testimony showing
that he did so attempt recklessly to cross in front of
the car must be held to remove entirely the presump-
tion of care. Indeed, this court has often stated the
rule as to the presumption more broadly than in *Myn-
ning* v. *Railroad Co.* Thus in *Adams* v. *Iron Cliffs
Co.,* 78 Mich. 271 (18 Am. St. Rep. 441), it was said:

"The presumption, in the absence of any evidence

to the contrary, obtains that the deceased used ordinary care and caution in attempting the crossing";

—and in *Van Doorn* v. *Heap,* 160 Mich. 199·

"In the absence of proof tenaing to show the contrary, where a person is killed by an accident to which there were no eyewitnesses, the presumption of the law is that he was in the exercise of due care." ·

But even if we were to concede the correctness of plaintiff's contention and hold that the evidence of contributory negligence must be considered as circumstantial rather than direct, in our opinion the case would then fall under the decision in *Kwiotkowski* v. *Railway Co., supra,* and the judgment must be affirmed under the doctrine of that case.

The testimony reveals a state of facts speaking most convincingly of negligence on plaintiff's part. Mr. Henry J. Day, a witness called by the plaintiff, testified:

"We were walking west on the north side of State street. I saw the car leave the curb. I could not have said it was Mr. Gillett. Was not giving special attention, but I noticed the car. I was stepping off the curbing onto the pavement at the northeast corner of State and Madison streets when the interurban car passed me; stepping down off the sidewalk on Madison street onto the pavement. * * * I couldn't say just where the interurban car was when I noticed the automobile turn and leave the curb. It was coming behind us. It was back of us when I first noticed the automobile leave the curb. When the automobile left the curb, it turned as near at right angles as an automobile would in making a turn, turned south across the track, as square as a car would. * * *

"Re-cross Examination.

"*Q.* You don't know where it (the interurban car) was?

"*A.* No, sir. I do know that the automobile had started out and was heading from the curb. We couldn't help but see it; there was nothing in the way. It was probably 60 feet west of Madison street.

"*Q.* When its direction indicated that it was crossing the track, the interurban was right on Madison street?

"*A.* No, I think not; I think it was back of that when the car left the curb.

"*Q.* But the automobile was headed west.

"*A.* Yes, sir.

"*Q.* But whether it was going west or going across the track you did not know, and it would not be indicated at once?

"*A.* Oh, no, he turned as square as anyone naturally would.

"*Q.* But they say it started slowly from the curb, is that right?

"*A.* I presume it is; I don't know as to that. I noticed it turning.

"*Q.* But anyway when it became apparent that the automobile was going to cross the tracks, the interurban was just about on Madison street?

"*A.* Just about the same time.

"*Q.* Then they came together almost in an instant?

"*A.* Sure."

Another of plaintiff's witnesses, Mr. Charles C. Smith, testified:

"I remember tne day Mr. Gillett got hurt. At the time I was right on the northwest corner of Jefferson and State. The first thing I noticed was the street car. The whistle called my attention to it. About the same time that I heard that whistle, the automobile was in motion out near the curb and turned right square in front of the car. When I first saw the interurban car, I should judge it was right along by Madison street. When it struck the automobile, it slid along in the neighborhood of 100 feet. * * *

"Cross-examination.

"*Q.* The auto turned right straight in front of the car?

"*A.* Well, as near as I could judge, yes.

"*Q.* And you heard the interurban whistle when it was about on Madison street?

"*A.* Yes, sir.

"*Q.* The automobile was headed slightly diagonally west, but generally south?

"*A.* Yes.

"*Q.* The automobile did not stop until it got on the track and was hit?

"*A.* No.

"*Q.* In other words they were both headed for a common point and they landed there at the same time?

"*A.* Yes, sir.

"*Q.* The whole thing happened in an instant almost?

"*A.* Yes, sir."

And Mr. Jerome C. Bently, for the plaintiff, testified:

"I had just got out in front of my store prior to the accident. Think I waited on Mr. Gillett and stepped right out. He was in the automobile when I went out. Saw young Holtzel crank the machine and the machine started. I didn't notice that the other young man had tried to crank it. Then Mr. Gillett started up his automobile and drove as nearly as possible straight south across the track. He had to go a little west to make the turn.

"*Q.* He has to get away from the curb. When he did that he went right across there?

"*A.* Yes. I will say that the rate of speed at which he went was not over five miles an hour. The top was up.

"*Q.* And from the time he started he went right on until the time he was hit?

"*A.* Yes, sir. I heard the interurban blow a whistle. The automobile was in front of Hewlett's store when the car struck it. It was probably 15 or 16 feet west of where it was standing at the curb, west of my store. * * *

"I would not say that the interurban was at Madison street when it whistled. I should say that it was right at the intersection of Madison and State streets. There are two stores between my store and Madison street, the First National Bank and the Star bakery.

"*Q.* The exact point where the automobile was at that time you do not know, do you?

"*A.* Almost on the track; going probably four or five miles an hour. It did not stop at any time. The interurban was going 20 or 25 miles an hour. They were both headed for the collision point."

Mr. Harry A. Hewlett, another of plaintiff's witnesses, testified:

"Am in the jewelry business. My place of business is the first store west of the Bently grocery store. I remember the day when Mr. Gillett got hurt. I was sitting at a bench at the time at the front window at the west side of my store. I had a view of the street. I was working on a watch, and I saw Mr. Gillett drive up in front of Bently's grocery store and go inside and come out again. I noticed the boys were cranking the machine. After the machine had started, I, of course, naturally looked at my work again. And just then I heard this sharp whistle and I glanced and I judged the car was probably in front of the Star bakery when I glanced up, and in an instant it hit Mr. Gillett's automobile. The interurban hit Mr. Gillett's car directly in front of my west window, almost in front of the sign post there. I didn't hear any signal from the interurban before this sharp whistle that I spoke of.   *   *   *

"I first observed the interurban when the whistle blew in front of the Star bakery, and saw it moving until it hit the automobile, but did not continue to observe it after that; didn't see the interurban stop, because I rushed right back to get my hat and go out there. The distance that I saw the interurban move would be about 44 feet.   *   *   *

"Cross-examination.

"His car was headed almost directly south when I saw him. When they struck him he was going across the track.

"*Q.* And had gone west probably as much as fifteen feet?

"*A.* Where he had started from? It is better than that, it would be twenty-two feet, because those buildings are twenty-two feet."

For the defendant, Mr. Arkell Partain, the motorman, testified:

"*Q.* Did you see this automobile?
"*A.* I saw it when it started up.
"*Q.* About where were you when it started up?

"*A.* At Madison street. It started west. It turned directly across the street.

"*Q.* What did you do?

"*A.* I first rung the air gong when I first saw it first move. Then I see the man was going to cross the street and I blew the whistle and threw on the emergency air at the same time.  *  *  *  The brakes were working. I should say my car was traveling from 12 to 15 miles an hour at the outside. It was a misty day, slippery. The condition of the track was very poor, slippery. When I say the condition of the track was very poor, I mean it was poor for stopping, starting, etc.  *  *  *

"*Q.* Now tell us all that you saw about that car and everything that you discovered as you came down the street.

"*A.* Well, I saw the wheels of the car begin to turn and I immediately rang the gong and at the same time I noticed that he was going to cross the street as soon as he could and then I blew the whistle and threw the emergency air on.  *  *  *

"*Q.* Whereabouts on Madison street were you when you rang the gong, before you blew the whistle?

"*A.* I was right in the middle of the street when I rung it, but I had rung the gong for the crossing before that.

"*Q.* How far did you go after ringing the gong in the middle of the street before you blew the whistle?

"*A.* Why, immediately as soon as I saw that he was turning away from the curb to go across the street, I blew the whistle and threw on the emergency air brake at the same time.

"*Q.* Whereabouts would you say that you were when you applied your emergency? That would be the front end of the car.

"*A.* Possibly fifteen or twenty feet past the street.

"*Q.* Where was the automobile then?

"*A.* The automobile was going right directly across the street.

"*Q.* Whereabouts with reference to the track?

"*A.* Well, I should say that he was twenty or twenty-five feet from the track.

"*Q.* How fast was he going in your judgment?

"*A.* Well, he wasn't going very fast; I should say about five miles an hour.  *  *  *

"I hit the automobile, I would say, just as near the center as could be.  The length of it was directly across the track.  I should say that the couplers struck the automobile first."

It must be remembered that State street is very wide and that it was 30.5 feet from the curb to the nearest rail of the track.  The automobile, while traveling this distance, also moved in a curve westerly till it was 15 or 20 feet west of the place from which it started.  It must, therefore, have traveled at least 40 feet before the front of the machine reached the first rail.  Before it would have been clear of the interurban car on the other side of the track, it would have had to travel the length of the automobile and the width of the track in addition.  It clearly appears from the testimony of the eyewitnesses as to plaintiff's conduct that, after leaving the curb, he did not stop again until he was struck by the approaching car. Their testimony conclusively shows that the automobile, as it approached the track, neither slackened nor accelerated its speed, but continued at a speed of about five miles an hour until the collision, from which fact an inference might properly be drawn that the plaintiff did not see the car at all.  It was his duty, under the circumstances, not only to look, but to look just before entering the danger zone, so as to make sure that it was safe to cross the track.  It is clear that if at this point he had looked, he would have realized the danger from the approaching car, which, under the testimony in this record, was then not to exceed 80 feet distant, and he would undoubtedly have made some effort to avoid the collision.  The other alternative is that he did look, but carelessly and without any regard for his own safety drove upon the track. The inevitable conclusion to which all unprejudiced

minds must come is that in either event plaintiff was clearly guilty of contributory negligence under the peculiar facts in this case, and that the trial judge was fully justified, and acted properly, in directing a verdict for the defendant.

The judgment is therefore affirmed.

BIRD, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred. OSTRANDER, J., did not sit.