WELLER v. MANCHA.

AUTOMOBILES—INTERSECTION OF COUNTRY ROADS—CONTRIBUTORY NEG-
  LIGENCE—EQUALLY DIVIDED COURT.
    Judgment for defendant *non obstante veredicto* in action under
      death act by administratrix of estate of eastbound motorist
      against owner and driver of southbound car which collided
      at an intersection of country highways on ground that plain-
      tiff's decedent was guilty of contributory negligence as a
      matter of law is affirmed by an equally divided court.

Appeal from Kent; Searl (Fred N.), J. Submit-
ted October 15, 1957. (Docket No. 56, Calendar No.
47,140.) Decided December 24, 1957. Rehearing
granted April 14, 1958. See 353 Mich 189.

Case by Vera Marie Weller, administratrix of the
estate of Ernest B. Weller, against George Mancha
and Cesario Mancha under the death act for dam-
ages resulting from automobile collision. Verdict
for plaintiff. Plaintiff moved for new trial limited
to question of damages. Defendants moved for judg-
ment. Judgment *non obstante veredicto* entered for
defendants. Plaintiff appeals. Affirmed by an
equally divided court.

*Allaben, Davids & Massie,* for plaintiff.

*Luyendyk, Hainer, Hillman, Karr & Dutcher,* for
defendants.

---

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Appeal and Error § 1160; 5A Am Jur, Automobiles
and Highway Traffic § 1028.

CARR, J. (*for affirmance*).  This is an action to re-
cover damages resulting from the collision of 2 auto-
mobiles at a highway intersection.  The accident oc-
curred on February 22, 1956, at approximately 2
o'clock in the afternoon.  At the time plaintiff's de-
cedent, Ernest B. Weller, was driving his automo-
bile in an easterly direction on 18-Mile road in
Tyrone township, Kent county.  Defendant George
Mancha, driving an automobile to which the other
defendant held the certificate of title, approached the
intersection from the north on Tyrone road.  The
Weller car was proceeding at approximately 30 miles
per hour as it entered the intersection.  Defendants'
automobile was being driven at a rate of speed of
between 45 and 50 miles per hour.  The cars came
together at a point near the center of the intersec-
tion and as a result Mr. Weller was thrown from his
automobile, sustaining injuries that resulted in his
death several days later.

The present action was brought by the administra-
trix of the estate in accordance with the provisions
of the statute (CL 1948, § 691.581 *et seq.* [Stat Ann
1955 Cum Supp § 27.711 *et seq.*]).  On the trial in
circuit court testimony was introduced by plaintiff
for the purpose of showing how the accident oc-
curred and the resulting damages.  At the conclusion
of such proofs defendants moved for a directed ver-
dict, decision thereon being reserved.*  The testi-
mony of defendant George Mancha was received and
at the conclusion of the proofs defendants renewed
their motion for a directed verdict, claiming that
plaintiff's decedent was guilty of contributory negli-
gence as a matter of law.  Decision on the motion
was again reserved, and the issues in the case were
submitted to the jury.  Verdict in the sum of $3,-
568.08 was returned, said amount being the aggre-

---

* See CL 1948, § 691.691 *et seq.* (Stat Ann and Stat Ann 1955
Cum Supp § 27.1461 *et seq.*).—REPORTER.

gate of expenses shown to have been incurred by the estate for hospital and medical attendance, for damage to the automobile, and for sums expended in connection with the funeral.

Plaintiff moved for a new trial limited to the question of damages, claiming as the basis thereof that the amount of the verdict was grossly inadequate. Defendants asked for the entry of judgment notwithstanding the verdict, for the reasons alleged in the motions made in the course of the trial. The trial judge in a carefully considered opinion came to the conclusion that on the record in the cause plaintiff's decedent was guilty of contributory negligence as a matter of law, in accordance with prior decisions of this Court in similar cases. Judgment was entered for defendants, and plaintiff has appealed. The motion of the latter for a new trial limited to the issue of damages was denied. Appellant asks that the judgment entered on the motions be set aside, and that this Court order a limited new trial. In his opinion the trial judge indicated that if a new trial were to be granted it should be general, rather than limited, in the interests of justice.

Decision in the case must rest on the basis of the facts as disclosed by the record before us. At the time of the accident the weather was clear, and it appears that as the 2 automobiles approached the intersection there was no obstruction to the view of either driver. The highways were gravel roads, and neither was a through thoroughfare. Plaintiff called as a witness a member of the Michigan State Police who investigated the occurrence shortly after the collision. This witness testified, in substance, that it was his conclusion from the marks that he found on the highways within the intersection that the impact occurred in proximity to the center, that the 2 roads were of approximately equal width, and that it was

"a wide open intersection" with nothing to interfere with vision in any direction.

Plaintiff administratrix testified that she was riding with her husband Ernest Weller on the occasion in question, that they were proceeding east on 18-Mile road, and that they were going to a funeral to be held at a church on said road just east of the intersection. She did not see defendants' car prior to the impact. The only witness who testified to observations of the collision between the automobiles was also driving east on 18-Mile road at approximately 30 miles per hour. The Weller car passed him about 3/4 of a mile to the west of the intersection, and the witness observed it from that time until the collision took place. After the passing, the Weller car was approximately 600 feet ahead of the car of the witness, and the 2 vehicles proceeded easterly separated by that distance. The witness did not see defendants' car prior to the moment of impact. After the collision he examined the intersection and noted where the cars skidded following the impact. He found no marks north of the point of contact, and none to the west. His observation of the Weller car did not permit him to see whether the driver actually made any observation to the north as he approached the intersection.

This witness further testified that the traveled portion of Tyrone was about 24 feet, that the corresponding portion of 18-Mile road was approximately 18 feet, and that the intersection was enlarged by "the curved corners." In his opinion, based on his observation, an automobile could be turned either way in safety at a speed of 30 miles per hour. The witness thought that at the time of the impact 10 feet of the Weller car had crossed the center line of Tyrone, leaving 6 feet west of said line.

It is conceded that defendant George Mancha was guilty of negligence in the operation of his car. He

.testified that he was driving from 45 to 50 miles per hour, and that he did not see the Weller car until ·the instant of the impact. Obviously he was not keeping a proper lookout under the circumstances for other traffic that might be approaching the in-tersection. In his charge to the jury the trial court referred to the admission made on the record as to the negligence of said defendant, submitting as the principal issue in the case the question as to the alleged contributory negligence on the part of plain-tiff's decedent.

The testimony in the case indicates that each driv-er approached the intersection without considering ·possible traffic on the intersecting road. It is a fair inference also that the automobiles of the parties entered the intersection at approximately the same time. The fact that the car of plaintiff's decedent was on the right of defendants' vehicle did not excuse Mr. Weller from making reasonably careful observa-tions for his own safety, and from acting according-ly. There is no direct proof as to whether he did, or did not, look to the north as he approached Tyrone road. That it was his duty to do so is not open to question. If we assume that he looked, the conclu-sion necessarily follows that he must have observed the Mancha car approaching at a speed between 45 and 50 miles per hour. There is no claim that de-·fendants' automobile either changed its direction or decreased its speed. The inference to be drawn from the proofs is that neither occurred. If Mr. Weller made the observations that due care required of him he was guilty of negligence as a matter of law in not acting accordingly for his own safety. The testi-mony of plaintiff's witness, above mentioned, indi-cates that decedent neither decreased nor accelerated his speed, nor sought to turn to his right to avoid a collision with defendants' car. If it be assumed that he did not look to the north at all as he entered

the intersection, or immediately prior thereto, the inference of negligence also follows. Assuming that he made the observation, he must be held to have seen what was there on the highway within his unobstructed view.

As pointed out by the trial judge in his opinion, this Court has in a number of prior decisions given consideration to factual situations analogous to that in the case at bar. In *Kok* v. *Lattin,* 261 Mich 362, the collision involved occurred at the intersection of 2 gravel roads, the vehicles reaching the intersection at approximately the same time. Neither driver saw the other until the cars were about 6 feet apart. The plaintiff's car as it entered the intersection slowed down to 20 miles an hour. Defendant was driving at a speed of 40 miles an hour, and did not decrease such speed as he came to the intersection. Commenting on the situation, it was said:

"Had the defendant looked he could have seen the plaintiff before and when he entered the intersection. Had the plaintiff looked he would have seen the defendant in time to have avoided the collision. He testified that he did look and saw no car approaching. His testimony in this respect is contrary to the physical facts. As his view was unobstructed and the defendant's car was there in plain sight, it must be held that he did not look. If he had looked, he would have seen what was there to be seen. The 2 cars reached the intersection at about the same time. If either had looked, he could have avoided the accident. Failure to look was negligence. The undisputed material facts left no question for the jury. The trial court correctly ruled that, as a matter of law, there could be no recovery."

The facts in the above case are practically identical with those in the instant controversy, except that neither party involved in the collision sustained injuries resulting in death.

In *Heckler* v. *Laing,* 300 Mich 139, defendant was driving on a trunk-line highway in a northerly direction. Plaintiff's decedent approached on an intersecting road, in a westerly direction. The testimony was in dispute as to whether he stopped his car before attempting to cross the trunk line. There was testimony that defendant was driving on the wrong side of the road, but this was also in dispute. Defendant testified that he did not see the Heckler car until the vehicles came in contact. His testimony clearly indicated his negligence, presenting the same situation in that respect as appears in the case at bar. At the conclusion of plaintiff's proofs defendant moved for a directed verdict on the ground of contributory negligence on the part of plaintiff's decedent. The motion was denied, verdict was returned for plaintiff, and judgment entered thereon. Defendant's motion for a new trial was also denied. On appeal the question presented was whether plaintiff's decedent was guilty of contributory negligence as a matter of law. In discussing the issue it was pointed out in the opinion of this Court that it was the duty of decedent not only to stop his car before attempting to cross the trunk line but also to make proper observations for approaching traffic. The testimony indicated that had decedent looked he could have seen for a distance of from 500 to 600 feet in a southerly direction on the trunk line. It was declared (p 145) that if decedent failed to stop or "having stopped, failed to make proper observation before entering the intersection, he was guilty of contributory negligence as a matter of law. (Citing prior decisions.)" In summarizing the situation, Mr. Justice Starr, who wrote for the Court, said (p 149):

"Under the testimony presented in the instant case, the inevitable and only reasonable conclusions that can be reached are: (1) That plaintiff's decedent did

not make proper observation before entering the intersection; or (2) that he made observation, but failed to see defendant's car, which was plainly visible, approaching the intersection; or (3) that he made observation and saw defendant's car approaching, and then negligently took his chances and drove into the intersection in the face of known danger.

"Under any of such conclusions, viewing the testimony in the light most favorable to plaintiff, her decedent was guilty of contributory negligence as a matter of law. Defendant's motion for directed verdict should have been granted."

In *Yackso* v. *Bokulich*, 333 Mich 412, which was an action for damages for injury to plaintiff's automobile sustained in a traffic intersection collision, plaintiff's driver noticed the approach of defendant at a rate of speed from 35 to 40 miles an hour with a portion of his vehicle on the wrong side of the center line of the street on which he was driving. The driver, testifying in the case, claimed that he assumed that defendant would slow up or change his course. Apparently, after entering the intersection he made no further observations. In holding that the driver of plaintiff's automobile was guilty of negligence as a matter of law, prior decisions relating to the matter of negligence under like circumstances were cited. Attention was called to the fact that the accident had occurred in daylight, that the weather was clear, and that the record did not disclose that there were other vehicles in proximity to the intersection. Each driver had an unobstructed view. Judgment in plaintiff's favor, based on the verdict of the jury in the common pleas court of the city of Detroit, and affirmed by the circuit court of Wayne county, was reversed with directions to set aside said judgment and to enter judgment for the defendant. Cases on which counsel for plaintiff relied were distinguished on the basis of the facts.

In *Knoellinger* v. *Hensler,* 331 Mich 197, there was testimony that defendant increased his speed and drove his vehicle on the left side of the highway following the making of observations by the plaintiff. In view of such proofs it was concluded that the matter of contributory negligence was for the jury to determine. In *Staunton* v. *City of Detroit,* 329 Mich 516, testimony was offered on behalf of plaintiff that defendant's vehicle had changed its course after observations had been made. The same situation was present in *Phillips* v. *Marten,* 331 Mich 330. Likewise, in *Stuck* v. *Tice,* 291 Mich 486, there was testimony that defendant Tice as he approached the intersection reduced his speed, apparently for the purpose of making a stop or a turn. Among other decisions supporting the holding of the trial judge in the instant case are *Gillett* v. *Michigan United Traction Co.,* 205 Mich 410; and *DiMatteo* v. *Smith,* 309 Mich 640.

In *Hett* v. *Duffy,* 346 Mich 456, plaintiff, as administratrix of the estate of Thomas Hett, sued to recover damages under the statute hereinbefore cited for alleged negligence in causing the death of decedent in an automobile accident. Defendants' motions for judgment *non obstante veredicto* and for a new trial were denied. At the time of the accident decedent was a pedestrian, and was struck by defendants' automobile while attempting to cross Southfield road in the city of Detroit. The proofs disclosed that either plaintiff's decedent had failed to make observations for approaching traffic or, if he did look, had failed to exercise reasonable precautions for his own safety. The judgment in plaintiff's favor was accordingly reversed without a new trial. While the case involves the matter of due care on the part of a pedestrian attempting to cross a public thoroughfare, nonetheless the principles involved are applicable in the consideration of the case at bar.

Apparently on the theory that there was no direct proof to establish whether plaintiff's decedent made observations to his left for possible approaching traffic on Tyrone road before entering the intersection, or after doing so, counsel for appellant insist that it must be presumed that he exercised due care with reference to such duty. The claim implies that it must be assumed that Mr. Weller looked to the north before attempting to cross Tyrone road. If we indulge in such assumption the conclusion must follow, as before suggested, that he saw defendants' car approaching and had an opportunity to note the speed at which it was being driven. The view was not obstructed in any way. Commenting on a like situation in *Heckler* v. *Laing, supra,* 146, 147, it was said:

"There is no testimony as to what observations, if any, plaintiff's decedent made before driving into the intersection. Plaintiff's counsel, in effect, contends that in the absence of such testimony it is presumed that plaintiff's decedent made proper observations. Any such presumption is overcome by the evidence that he had a clear and unobstructed view, to his left, of US–2. He either saw or is presumed to have seen defendant's car approaching and by the exercise of due care and caution could have avoided the accident. In the case of *Patt* v. *Dilley,* 273 Mich 601, 606; Mr. Justice WIEST said:

" 'Presumptions disappear when the facts appear. The facts appear when the evidence is introduced from which the facts may be found. Presumptions cannot be weighed against evidence for they fade out in the light of evidence, no matter how contradictory the evidence.'

" 'We are of the opinion that it is clear that it is the rule in this State that the presumption that a plaintiff is free from contributory negligence can be said to apply only in cases where there is an absence of any direct evidence to the contrary. The question

then is, Was there evidence before the trial judge which could be said to overcome the presumption relied upon?' *Baker* v. *Delano,* 191 Mich 204, 209.

"See, also, *Gillett* v. *Michigan United Traction Co.,* 205 Mich 410; *Rousseau* v. *Brotherhood of American Yeomen,* 186 Mich 101; *Union Trust Co.* v. *American Commercial Car Co.,* 219 Mich 557; *Maki* v. *William Bonifas Lumber Co.,* 278 Mich 610; *Christiansen* v. *Hilber,* 282 Mich 403."

Plaintiff's principal witness, who was driving a short distance behind the Weller car immediately prior to the impact, testified to his observations of that vehicle. The physical facts as disclosed by the record are at variance with any presumption of due care. There were no marks on 18-Mile road to indicate that Mr. Weller had undertaken to apply his brakes, to accelerate his speed, or to change his course prior to the impact. It is undisputed that he could not have failed to see the approaching automobile had he looked to the north as he entered the intersection. The testimony indicates that he drove in a straight line prior to the collision, and at a uniform rate of speed.

The witness above referred to observed the accident. He was an eyewitness of what occurred and of the conduct of plaintiff's decedent, but could not state affirmatively whether decedent did or did not make observations to the north. As before pointed out, decedent was, in either event, guilty of contributory negligence. Under the facts in this case the presumption of freedom from negligence on the part of decedent may not be invoked in plaintiff's favor.

Reference is made by counsel to the fact that if decedent entered the intersection first, or if the 2 cars entered it simultaneously, he was entitled to the right-of-way. The basis of the claim is found in CLS 1956, § 257.649 (Stat Ann 1955 Cum Supp § 9.2349), which, insofar as material here, provides:

"When 2 vehicles enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right-of-way to the vehicle on the right except as otherwise provided in section 651."

The section mentioned in the quotation refers to intersections with State trunk-line highways. The suggested argument implies the assumption that plaintiff's decedent looked to his left, saw defendant's car approaching, and proceeded in reliance on the statutory right-of-way. If such was the situation, the conclusion may not be avoided that he was guilty of contributory negligence as a matter of law. If he saw defendants' car and noted the speed at which it was approaching, he must have realized that if both cars continued at the rate they were respectively traveling a collision was inevitable. While it was the duty of defendant George Mancha to allow decedent to pass through the intersection before him, nonetheless the fact that he did not do so did not relieve decedent from having his car under control and operating it reasonably. *Geeck* v. *Luckenbill,* 215 Mich 288.

In *Kerr* v. *Hayes,* 250 Mich 19, which involved an intersection accident, neither highway being superior to the other in any way, the proofs indicated that plaintiff did not look to his left. Referring to prior decisions on which the plaintiff relied, it was said (p 21):

"These cases, however, also point out that the statutory right-of-way is not an assurance of safety, nor an absolute right in all conditions, but that both drivers must use due care. A driver cannot continue to assume that the one on the left will accord him right-of-way when the circumstances would indicate the contrary to a reasonable person."

Judgment in plaintiff's favor was reversed, without a new trial.

In *Block* v. *Peterson,* 284 Mich 88, an action for damages for personal injuries sustained in an intersection collision, plaintiff had the statutory right-of-way. In the trial court judgment notwithstanding the verdict of the jury was entered for defendant. On appeal such judgment was affirmed. In thus disposing of the case, it was said (pp 94, 95) :

"The statutory right-of-way is not an assurance of safety, nor of absolute right under all conditions. Both parties must use due care. A driver cannot continue to assume the one on the left will accord him the right-of-way when the circumstances would indicate the contrary to a reasonable person. *Kerr v. Hayes,* 250 Mich 19. It was incumbent upon both plaintiff and defendant in approaching the intersection to use care commensurate with the obvious circumstances regardless of which had the favored road. *Benson v. Tucker,* 252 Mich 385. Though plaintiff may have had the right-of-way at the intersection, the duty was incumbent upon him to exercise reasonable care for his own safety. One must exercise due care when attempting to cross streets and intersections whether on foot or driving an automobile. One is not free from contributory negligence who observes an automobile coming on the intersecting street and then proceeds to cross without giving further heed to the oncoming vehicle until the instant before or at the time of collision. *Ude v. Fuller,* 187 Mich 483; *Geeck v. Luckenbill,* 215 Mich 288; *Smith v. Ormiston,* 242 Mich 600.

"This case is similar to *Boerema v. Cook,* 256 Mich 266; *DeCoopman v. Hammond,* 279 Mich 619; *Wehling v. Linder,* 248 Mich 241; *Kok v. Lattin,* 261 Mich 362. And the holdings in this State are in accord with the great weight of authority. Babbitt's Motor Vehicle Law (4th ed), § 555; 3–4 Huddy's Cyclopedia of Automobile Law (9th ed), p 229; 1 Berry, Automobiles (6th ed), § 1043; 1 Blashfield, Cyclopedia

of Automobile Law (1st ed), pp 285, 286; and cases cited."

See, also, *Koehler* v. *Thom,* 285 Mich 593; and *City of Kalamazoo* v. *Priest,* 331 Mich 43.

On the record in the case at bar the trial judge was right in entering judgment for the defendants notwithstanding the verdict of the jury. Such judgment is affirmed.

DETHMERS, C. J., and SHARPE and KELLY, JJ., concurred with CARR, J.

BLACK, J. (*for reversal*).   Michigan's leading guide to evidentiary employment of the presumption of due care entered our reports 38 years ago. It is cited as *Gillett* v. *Michigan United Traction Co.,* 205 Mich 410. *Gillett* "classifies cases to which the presumption should or should not apply as follows:

"(a) The case where direct, positive, uncontradicted and unimpeached testimony of an eyewitness or eyewitnesses discloses negligent acts or omissions of the decedent. The presumption as to this class is, of course, eliminated by such testimony as a matter of law.

"(b) The case where direct or circumstantial evidence is presented which has but a slight or inconclusive tendency to overcome the presumption. As to this class, the presumption and the testimony make, according to *Gillett,* a jury question to be submitted under rules stated on page 416 of the report.

"(c) The case where direct testimony of an eyewitness or eyewitnesses, as to negligent acts or omissions of the decedent, is contradicted, impeached, or rendered improbable by other circumstances shown in evidence. This class of case should, according to *Gillett,* be governed by the same rules that appear on page 416 of the report.

"(d) The case where circumstantial evidence of contributory negligence, usually consisting of or

supported by physical facts, is so clear as to lead to inevitable conclusion by all reasonable minds that the decedent was contributorily negligent. As to this class the presumption, as in (a) above, is eliminated from the case." (Quotation from separate opinion, *Hett* v. *Duffy,* 346 Mich 456, 462, 463.)

The case before us, in my view, presents a testimonial situation calling for jury determination of the question of contributory negligence according to division "(b)" above. My Brother, holding to opposite view, points to the presence of "an eyewitness of what occurred and of the conduct of plaintiff's decedent" and says that "The physical facts as disclosed by the record are at variance with any presumption of due care."

The issue of present disagreement has ridden into our Court on a motion for directed verdict assigning contributory negligence. In such case we are obliged —so I understand[*]—to view the direct and circumstantial evidence, and all fair inferences to be drawn therefrom, in light favorable to this plaintiff. I shall do so. The car driven by plaintiff's decedent will be referred to as the "Weller car;" the one driven by defendant George Mancha (son of defendant Cesario Mancha) will be referred to as the "Mancha car," and the one driven by the witness Bylsma will be referred to as the "Bylsma car."

---

[*] In *Welty Estate* v. *Wolf Estate*, 345 Mich 408, 416, reference was made by 3 members of this Court to the "dismaying tendency in our State toward curled-lip service of the rule of favorable view" and to the immutable fact that "Every motion for directed verdict skirts edge of constitutional right of trial by jury." Eight months later the court of appeals of our Federal appellate circuit, speaking in similar tone of another Michigan motion for directed verdict assigning contributory negligence, said this (*Patterson* v. *Pennsylvania Railroad Company* [CCA], 238 F2d 645, 650):

"Some of us have noted a modern tendency—perhaps a growing one—to give mere lip service to these sound principles. Trial by jury is our established constitutional safeguard against assumption of unwarranted judicial authority and should be honored by steadfast observance rather than discarded by dictatorial breach."

*First:* It was said, in *Fairchild* v. *Detroit, Grand Haven & Milwaukee R. Co.,* 250 Mich 252, 260:

"There are many cases holding that the presumption of exercising due care does not apply where there are eyewitnesses to the accident. But, if we are to preserve and apply the reason underlying this presumption, we must hold that the language used in such opinions cannot be too literally construed, and that 'eyewitnesses' to the accident must be held to mean those who have knowledge of some fact or circumstance which throws light upon the question as to whether or not the deceased did those things which under the circumstances constituted the exercise of due care."

The so-called "eyewitness" in this case, Reverend Gerrit Bylsma, was driving some 700 feet behind the decedent's car. So separated the Weller and Bylsma cars were proceeding east toward the intersection at a common speed of 30 miles per hour. Although his attention was directed straight ahead, and although the intersection was completely "open," Bylsma did not see the southbound Mancha car until it struck the Weller car. Considering the intervening distance, the end-away direction of travel of the Weller car, and the moderate speed thereof, Bylsma understandably could not and did not testify to any act on the part of plaintiff's decedent which might within reason tend to overcome the presumption of due care. He did testify to facts indicating that the collision occurred in the southeast intersectional quadrant and that the force thereof—applied as the photographic exhibits show at the left front door, and frame below that door, of the Weller car—was sufficient to drive the Weller car sidewise into a field at southeast corner of the intersection.

Plaintiff's counsel account for Bylsma's failure to precedently see the Mancha car by pointing to the presence of snow everywhere (excepting on the sur-

face of the highways) and by reference to the color of the Mancha car—a light gray. They make the same point with reference to possibly belated discovery by the decedent of approach of the Mancha car. Photographic exhibit 6 in the case (the wrecked Mancha car portrayed against the background of then existing snow) apparently tends to support this theory. Whatever view one may take of the point, its presence in company with other proven circumstances leads to conclusion that Bylsma cannot be regarded as an "eyewitness," within the rule of *Fairchild*, excepting in this: Bylsma did testify to certain facts which on favorable view tend to establish due care on the part of the decedent. They consist of an unusually moderate rate of speed of the decedent's car, toward and into the intersection, and of occurrence of the blow from the left after the decedent's car had entered the intersection well ahead of intrusion of the Mancha car therein. Accordingly, and returning to the postulates of *Gillett*, I respectfully suggest that the so-called eyewitness testimony in this case does not—as a matter of law at least—annihilate the presumption of due care and that the question of decedent's contributory negligence should have been submitted to the jury in accordance with the following rules:

"But while this is true, it does not follow, in the case of the particular presumption here under consideration, that immediately upon the introduction of any evidence whatsoever tending to show negligence on the part of the deceased the presumption vanishes and that the burden then rests upon the plaintiff of establishing by affirmative evidence that decedent exercised due care in every respect. A distinction has been recognized between direct, positive and credible rebutting evidence and mere circumstantial evidence having but a slight or inconclusive tendency to rebut the presumption. When direct,

positive and credible rebutting evidence is intro-
duced, the presumption ceases to operate; but when
circumstantial evidence of doubtful value is the only
rebutting evidence offered, the question should be
submitted to the jury, and if they decide that the cir-
cumstantial evidence should be disregarded, the pre-
sumption is still sufficient to establish plaintiff's case
as to the exercise of proper care by the deceased.
Moreover, it is only in cases where direct testimony
of credible eyewitnesses as to the negligence of de-
ceased is uncontradicted, that the court is warranted
in directing a verdict for the defendant on the
ground of decedent's contributory negligence. If the
testimony is contradicted by other witnesses, or ren-
dered improbable by the circumstances, or if the
credibility of the witnesses is attacked, the question
must be submitted to the jury, but in such case the
jury must weigh merely the evidence, unaided by the
presumption. If, however, the jury decide that the
testimony tending to show negligence on the part of
the deceased in the particular claimed has been over-
come by other evidence and should be disregarded,
the presumption will, of course, if necessary, still
operate to establish plaintiff's case as to the care
exercised by the deceased." (Quotation from *Gillett,*
pp 415, 416, of report.)

*Second:* We said, in *Normand* v. *Thomas Theatre
Corporation,* 349 Mich 50, 59:

"As we have previously seen (*Clark* v. *Shefferly,*
346 Mich 332) the question of contributory negli-
gence is usually judged, not alone by what the plain-
tiff did or did not do, but also by the conjoining facts
pertaining to what in the way of legal duty the plain-
tiff had a right to expect of the defendant."

In any view of this case—favorable to plaintiff or
otherwise—plaintiff's decedent entered the intersec-
tion at lawful rate of speed, on his own side of the
highway, and well in advance of young Mancha's
approach to and entry into the intersection. Unless

we are to say that the statute (CLS 1956, § 257.649 [Stat Ann 1955 Cum Supp § 9.2349]) means nothing, the decedent was entitled to the first right of passage through that intersection and to assume—provisionally at least—that an approaching southbound motorist would accord him such right. His primary duty of observation, on approach to the intersection, was to his right rather than to his left, and this brings the writer to candid observation that we have attempted in the past to impose unrealistic if not impossible duties on motorists when they approach intersections accompanied by the right, accorded per lawful and necessary rules of traffic control, of first passage across. The settled law of contributory negligence knows no rule of self-insurance, yet such is the essence of altogether too many directed verdicts our decisions have approved or ordered, in intersection cases, since *Kerr* v. *Hayes,* 250 Mich 19, departed from the rule of *Grodi* v. *Mierow,* 244 Mich 511.

Some of us are drivers of automobiles. We have come to know that, on favored approach to intersections, observation instinctively concentrates on that zone which is nearby at left and right to exclusion of traffic which even though observable is apparently at safe distance to left and right. The reason, of course, is that "dead ahead" lookout is the first rule of motoring care. We have learned, too, that it takes quite an amount of distance-time to turn one's head and gaze each way, for duty-observation, and that no human can or does look both ways at once. Janus is no more.

Even at the reduced rate of 30 miles per hour a car travels approximately 45 feet per second. Add human sensory and motor reaction time to braking distance and we obtain good reason for holding that the issue of contributory negligence, of a motorist proceeding toward and into an intersection with "the

right-of-way," should as a rule be held one of fact. A careful glance to the left by this decedent when he was safely short of the intersection—if he did so glance—might well have disclosed the southbound route of approach as being clear for a reasonably safe distance. A turn of the head and of the gaze to the right—if such was done—thereupon would have disclosed that the northbound route, the one of right-of-way danger and hazard, was safely clear. Meanwhile the decedent's car was inferably proceeding forward, toward and into the intersection. Another glance to the left—if made—would have disclosed imminent approach of the Mancha car. We do not know that any of these things took place, of course, but we know they could have taken place and that they, or equivalent, presumptively did so. What, then, the presumption being so, was the decedent to do on discovery of impending danger? Apply brakes and attempt to stop in the intersection, or accelerate in effort to drive clear? While we do not know what he did, it is in order to say that the same dilemma presumptively confronted the plaintiff's assured in *Detroit Automobile Inter-Insurance Exchange* v. *Powe*, 348 Mich 548. There we held that the question of contributory negligence was one of fact and that the trier of facts was entitled to apply the presumption to the driver proceeding with the lawful right-of-way. I think we should do so here.

The whole skein of argument supporting this mandatory verdict is supported by the false premise that we must accept without question young Mancha's testimony to effect that his continued rate of speed-approach to and against the Weller car was a mere 45 to 50 miles per hour. My Brother so accepts that testimony; whereas, and so far as print can disclose, it appears to this writer as bordering the incredible. Do the veterans of this Court really believe that young Mancha did not see, at any stage of the final

fatal moments, the comparatively slow-moving and dark-colored eastbound car which at all times had to be—straight ahead in the Mancha line of vision— much nearer to the intersection and point of impact than he was? Must we accept his rate of speed as testified considering the location and force of impact and final resting place of the 2 wrecked cars? Come to think of it, is the question of young Mancha's credibility one of law for the court because no one took oath to dispute him? I answer as in *Yonkus* v. *McKay*, 186 Mich 203, 210, 211 (Ann Cas 1917E, 458), that is to say:

"To hold that in all cases when a witness swears to a certain fact the court must instruct the jury to accept that statement as proven, would be to establish a dangerous rule. Witnesses sometimes are mistaken and sometimes unfortunately are wilfully mendacious. The administration of justice does not require the establishment of a rule which compels the jury to accept as absolute verity every uncontradicted statement a witness may make."

The testimony of this defendant driver, "backed by an impelling motive, was not so consistent, clear and convincing that the jury was bound to accept it in its entirety as conclusive proof. It was for them and not the court to pass upon his credibility." (Quotation from *Ricketts* v. *Froehlich*, 218 Mich 459, 463.)

Turning now to young Mancha's testimony: I think the jury should have been permitted to weigh it in connection with other facts and circumstances for the purpose of determining his credibility; for the purpose of determining presence or absence of proof tending to overcome the presumption of due care, and for the purpose of determining the proximate cause of the death of one whose principal fault appears to have been that of slow motoring speed

and (probably) slow reflexes. Young Mancha testified:

"*Q.* Well, you knew that at any intersection if it is uncontrolled where 2 cars approach approximately at the same time, the car on your right has the right-of-way? You knew that, didn't you?

"*A.* Yeah.

"*Q.* But you never saw this car, Mr. Weller's car, at all, did you?

"*A.* That is right. I didn't see it at all.

"*Q.* No reason why you couldn't see it, was there?

"*A.* No. I just didn't see it.

"*Q.* Perfectly wide open intersection there to your right as you were driving south, wasn't it?

"*A.* That is right. I was driving south.

"*Q.* And if you had seen it you would have slowed up, wouldn't you?

"*A.* Yeah.

"*Q.* And you would have afforded him the right-of-way then, would you?

"*A.* It's a big road through here.

"*Q.* A big road?

"*A.* Yes, sir.

"*Q.* Sure. But I say, if you had seen him?

"*A.* If I had seen him I would've stopped.

"*Q.* You would have slowed up, wouldn't you?

"*A.* I would've stopped if I would have seen him.

"*Q.* Well, if you had just taken your foot off the throttle there for an instant his car would have had the right-of-way, gone through and there would have been no accident, isn't that true?

"*A.* That is right."

It is said that the Mancha car came forward into the intersection, without swerving and on its own side of the north-south highway, until the impact occurred. As the saying goes I cannot "buy this," at least as a matter of law. Photographic exhibits 5 and 6 furnish mute proof that young Mancha did belatedly see the Weller car and that he swerved his

father's car to the left in vain effort to avoid the collision. The force of the impact against the side of the Weller car was borne by the *right front* side of the Mancha car. Trooper Weaver noted this fact in the course of his testimony. And, as previously noted, the impact occurred on the wrong side of the north-south highway for a southbound motorist.

The final circumstance which is said to exhibit contributory negligence of the decedent is the absence of skid marks west of the point of impact. The conclusion implies without evidentiary support that skid marks would have been left on this particular road surface, in the intersection or approaching it, if the decedent had braked precedently. The fact is that the surface of the 2 highways was what is called "treated gravel." I refuse to find, as a matter of law, that the brakes of either car if applied before collision would have left visible or provable marks on such a road surface. There is no direct testimony on which we may base such finding and the worth of the unfavorable-to-plaintiff inference my Brother draws in such regard became an appropriate subject of jury determination. Furthermore, and directing our thought again to what the decedent did or did not do, can it be said that an eastbound motorist of reasonable prudence (approaching and entering this intersection under similar circumstances) would have decelerated, rather than accelerated, when in the course of presumptive due care it became apparent that his lawful right of initial passage was about to be violated? The answer to such question should be found in a jury room—not our conference room.

This is a plain case for jury determination of the question of contributory negligence. The jury should have been instructed that the presumption of due care attended Mr. Weller provisionally; that it was the duty of the jury to determine whether the presumption had been overcome by any testimony in the

case, direct or circumstantial, and that the jury should find the decedent free of contributory negligence unless, in its judgment, the testimony established want of due care on his part.

I vote to reverse with remand for complete retrial and with costs to plaintiff.

SMITH, EDWARDS, and VOELKER, JJ., concurred with BLACK, J.