## SHAW v. BASHORE.

AUTOMOBILES—PEDESTRIANS—DIRECTED VERDICT—CONTRIBUTORY NEG-
LIGENCE—EVIDENCE—AMNESIA.

> Directed verdict for defendant motorist on ground that plaintiff
> pedestrian, a 51-year-old woman, was guilty of contributory
> negligence in crossing street elsewhere than at street intersec-
> tion at 7 p.m. on a hazy, misty Christmas Eve when the vis-
> ibility was poor, *held*, error, there being a failure to take
> the view most favorable to plaintiff of the evidence, including
> that of defendant, claimed to be intoxicated at the time, that
> he did not see plaintiff until the moment of impact, and that
> plaintiff suffered amnesia as a result of the accident and
> remembered nothing as to a period beginning a few minutes
> before the accident.

DETHMERS, C.J., and CARR and KELLY, JJ., dissenting.

Appeal from Ingham; Coash (Louis E.), J. Sub-
mitted June 6, 1957. (Docket No. 27, Calendar No.
47,314.) Decided April 15, 1958.

Case by Anna Shaw against John Bashore, Jr.,
for injuries sustained as pedestrian when struck by
automobile. Directed verdict and judgment for de-
fendant. Plaintiff appeals. Reversed and remand-
ed.

*John L. Leighton* and *Joseph Lavey* (*Vernon J.
Andrews,* of counsel), for plaintiff.

*Jennings, Fraser, Parsons & Trebilcock* (*Everett
R. Trebilcock,* of counsel), for defendant.

---

REFERENCES FOR POINTS IN HEADNOTES
3 Am Jur, Appeal and Error § 886.

VOELKER, J. This appeal grows out of a driver-pedestrian accident on a public street not at an intersection during which the plaintiff pedestrian was grievously injured. At the close of the plaintiff's proofs the defendant moved for a directed verdict, which was granted and this appeal has resulted.

At the trial the plaintiff was unable to testify to the circumstances surrounding the accident, claiming that as a result of her injuries she had suffered from amnesia, or loss of memory, a lapse which she alleged and testified covered an interval immediately preceding the accident and lasting until she woke up in the hospital the next day, Christmas. She testified that she was 51 years of age; that she had worked around her home that day; that she and her husband had expected company that night and she had made spaghetti sauce and 3 kinds of candy; that her husband got home from work about 4:30 that afternoon; that they went shopping for groceries and snacks for their expected company that night and returned home shortly after 5; that they relaxed and read the newspapers till about 20 minutes to 6 when they left to walk to the Moose Lodge (a block and a half away), arriving shortly before 6, where, as planned, they met their son and some friends; that during her stay at the lodge hall she drank 2 whiskey highballs in soda; that when she and her husband left at about 6:50 her son presented her with a pint of whiskey, which she carried with her; that she and her husband parted at a drugstore and she went on ahead on her way home to prepare their supper.

She further testified that she remembered nothing after passing the Odd Fellows Hall (near the scene of the accident and somewhat north of a point kitty corner from her apartment across the street). "My memory is cut off at the point where I remember walking past the Odd Fellows hall," she testified. "I have no further recollection."

An expert witness, Dr. Clarence W. Muehlberger, chemist and toxicologist for the Michigan department of health, testified that he had analyzed a blood sample taken from the defendant and found that it contained .17% alcohol by weight. He further testified that in his opinion one whose blood sample showed .15% alcohol or more was "definitely under the influence." He further testified that these tests and figures were recognized among toxicologists and medical science in general, being accepted among others by the American Medical Association, the National Safety Council and the American Association of Chiefs of Police.

The same police officer who took the blood sample from defendant testified at the trial that he had first refreshed his recollection from a police report he had made the night of the accident and that he had discussed the accident with the defendant at the scene; that "He stated he hadn't seen her until the accident, until the collision;" that he, the officer, had observed that there had been snow and the streets were slushy; that the visibility was very poor; that it was a hazy and misty night with some fog combined with mist. On the question of defendant's drinking he testified as follows:

"I determined that he had been drinking and I asked and he told me he had had 4 cocktails of some nature or some combination. I also concluded he had been drinking as his eyes were bloodshot and watery. He talked not real clear and his words were slightly slurred. He was, of course, very excited. The odor of alcoholic beverage was very strong on his breath. I don't recall if there were any lights on Mr. Bashore's car. I asked him if he would permit a blood alcohol test taken and he requested that we do so."

. The defendant was called for cross-examination under the statute.* He testified, among other things, that he had had a few drinks earlier that afternoon, possibly 4; that the weather was cold and there was snow and slush on the streets; that about 7 p.m. as he proceeded northerly up the street where the accident occurred his lights were on dim; that he did not feel the drinks he had taken except that he felt warmer; that he didn't recall whether his windshield wipers were on; that his lights showed up "good" and that he could see about 50 feet ahead; that he did not see the plaintiff as he crossed the street intersection some 50 feet below the accident; that he did not recall looking at his speedometer.

He further testified as follows:

"I saw Mrs. Shaw almost the same time as the impact but I did see Mrs. Shaw to the right of my car and there was no chance to stop. The accident followed almost immediately after my seeing Mrs. Shaw. I had a horn on my car and it was in working order but had no opportunity to blow my horn. I made an effort to put on my brakes but it wasn't in time. I knew I hit somebody and it was then I started to apply my brakes. My car rolled about 40 or 50 feet after I applied my brakes."

He further testified that at the impact he saw the plaintiff "flying through the air" over the right side of his car, over the right hood by the sun visor; that his windshield was not fogged over; that his vision was normal; that after he stopped and went back he found the body of the plaintiff "possibly 8 or 9 feet from the curb;" and, categorically, that he was driving 20 miles per hour—this despite his previous testimony that he did not recall watching his speedometer.

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—Reporter.

Upon examination by his own counsel he testified that when he first noticed the pedestrian she was moving from the east (direction of curbing) approximately 4 to 6 feet ahead of the car, and that he thought 1 step would carry her right directly to the right of his car, in front of it. "She was moving and she was approximately 1 step to the right of the extreme right side of my car." On redirect examination he denied that he was drunk.

Plaintiff's doctor described her condition and state when he first saw her in the hospital as follows:

"She had numerous contusions, very large laceration of the left leg and a compound fracture of the left tibia and fibula. The bone in her left leg stuck out through the skin. She was in considerable shock. I don't know how many fractures there were but there were several pieces. She had fractures to both sides of her pelvis which was discerned by a later X-ray study. I administered plasma and cleaned out the wound, put the fractures together and closed up the wound."

For a time amputation was seriously considered. She did not leave the hospital until the middle of the following February, during which time she had various operations, skin grafts and was in a pelvic cast. She had to return to the hospital for additional therapy under anesthesia. Her cast was not removed until April. The record discloses that apparently the only conversation she ever had with the police officer took place in the hospital the night of the accident. This last assumes some importance in view of later developments in this case, presently discussed.

As noted, at the close of plaintiff's proofs, defendant moved for and the court granted a motion for a directed verdict. Among other things the court then said: "The burden was on plaintiff to prove not only that the defendant driver was negligent but that she

herself was free from contributory negligence. The physical facts show that she stepped directly into the path of this car." In reaching this conclusion the court appears to depend largely upon the testimony of officer Bell that plaintiff told him the same night after the accident while in the hospital that "Mrs. Shaw told me in her hospital room that she did not see the car." (The court's opinion neglects to mention that this same officer also testified that the defendant told him he did not see the plaintiff until the impact.)

To ground the decision thus is to accept the testimony proffered by and on behalf of plaintiff in its worst not its best light. It is to utterly ignore the plaintiff's own testimony that she could not remember the circumstances of the accident. Manifestly if she was unable to remember the accident she was correct when and if she told the police officer that she didn't see the car. This record also shows that she was in a state of pain and "considerable shock" upon her arrival at the hospital and when such conversation took place.

The court's view of the defendant's testimony is considerably more charitable:

"The testimony * * * of Mr. Bashore * * * was that * * * she stepped directly into the path of his automobile. * * *

"The testimony of the only other witness, who is the driver, and he is a competent witness to testify, was that she stepped directly into the path of his car.

"The physical facts are such as would make this court find her guilty of contributory negligence; in other words she was not keeping a proper lookout for traffic when she attempted to cross that street, so I am going to order you to remain in your seats and give a verdict for the defendant of no cause for action."

While it is perhaps not strictly necessary to our decision, we think it is not without some pertinence to quote what the court had to say in his ruling on the motion about the drinking of the defendant, of whose testimony it seemed disposed to take such a favorable view:

"The officer also testified that the man admitted having some drinks but after they took the blood test* and examined and questioned him at the police station he was allowed to go home."

Presumably this charitable action by the officer late on Christmas Eve to a married man with a family magically dissipated and held for naught the entire testimony of the police officer and also the lengthy testimony of Dr. Muehlberger to the effect that a man whose blood sample showed .17% alcohol by weight was "definitely intoxicated."

This is "favorable view" with a vengeance, but solely from the defendant's side. If the plaintiff had been killed, as she so nearly was, apparently the defendant could well have been successfully prosecuted for manslaughter (despite the added burden of proof) under our holding and the plain language we employed in *People* v. *Townsend,* 214 Mich 267, 272 (16 ALR 902)—assuming, perhaps hopefully, that in the meantime we have not swept that case into the dustbin.

Though the case was not cited by the court, its decision based on these grounds is really our hardy old friend *Schillinger (Schillinger* v. *Wyman,* 331 Mich 160), this time travelling incognito and with an added new twist. Once again what someone allegedly told someone is seized upon and invoked and given the worst possible construction—from the plaintiff's side, that is—but this time it is the testi-

---

* Reference is to taking a sample for the blood test. At that time the test itself was not completed nor the results known.

mony of an intoxicated defendant that is seized upon as the final clincher that slays the presumption of due care and would banish this broken plaintiff forever from having her jury day in court. It would perhaps be enough to reverse this case simply on the correct application of favorable view, and stop there, but *Schillinger* has enjoyed its long reign of triumph and has waited a long time for its comeuppance, and we shall have our say.

The dubious and elusive doctrine of *Schillinger* has already been eloquently appraised, criticized and put in its proper perspective by Justices BLACK and SMITH in their opinions in *Hett* v. *Duffy,* 346 Mich 456, 462, 472. This writer adopts those opinions in that case so far as they apply to our situation. As pointed out by Mr. Justice SMITH at page 473, the doctrine that "When there is an eyewitness to an accident the issue of due care rests upon proof and not upon presumption" was a dictum, however sound, not necessary to the decision of the case in *Foote* v. *Huelster,* 272 Mich 194 at 198. From that passing dictum, correct as it may be in cases where it may properly apply, there has sprung up in this State the weird legal progeny now confronting us, a sleight-of-hand development which perhaps (up to this case) reached its finest flower in *Schillinger.* It now appears that a trial court would further extend recent legal perversions of that doctrine and now accept the conflicting testimony of an intoxicated defendant who, to put the best version on *his* inconsistent accounts, caught but a fleeting glimpse of the doomed plaintiff split seconds before his car struck her and she "flew through the air."

We will have none of *Schillinger* much less any such bold extensions of its bleak doctrine. As Mr. Justice BLACK so well said at page 466 in *Hett:*

"This Court in recent years has gone a long way toward final destruction of the presumption of due care.   In *Schillinger* we went so far as to manufacture *sua sponte* an 'eyewitness' out of pure rumor made into hearsay.   Upon that tragic novelty, *Schillinger* until it is retired has eliminated the presumption of due care from all pedestrian death cases where the Court chooses to presume, or infer from hearsay, that the surviving driver 'saw decedent at all before the accident.'   The driver may have seen nothing of evidentiary value tending to prove or disprove contributory negligence of him whose mouth is closed in death.   The Court knows naught of that without the testimony of such driver.   It simply presumes that the driver may have seen something and, on that homemade *ipse dixit*, the time-tried presumption of due care is ousted from the case as. a matter of law.   A new presumption has thus crept without honors into Michigan pedestrian law—a presumption of existence of credible eyewitness testimony to negligent acts or omissions of the decedent—a presumption that annihilates another presumption, that of due care, as a matter of law."

Justice BLACK gathers up the various counts of his indictment at page 469 and has these ringing words to say:

"Until we modify *Schillinger* to *Gillett** and *Petersen** the representatives of deceased pedestrians in cases where there are no real eyewitnesses to the decedent's conduct will be denied right to jury verdict if they do not call the surviving driver to the stand and correspondingly will be denied that right if they do call him.   The driver thus and regardless of his impeachment or the inconclusive nature of his testimony will continue to enjoy shameful advantage over the dependents of his victim—an advantage of even greater magnitude than he obtained over that

---

* *Gillett* v. *Michigan United Traction Company,* 205 Mich 410; *Petersen* v. *Lundin,* 236 Mich 590.—REPORTER.

victim when the unequal battle of steel against flesh was resolved against the latter."

This curious judicial passion so evident in some quarters to resolve all possible doubts against the plaintiff in these types of cases, upon motion for peremptory verdict, again comes under searching scrutiny by Mr. Justice Black in his recent opinion in *Weller* v. *Mancha*, 351 Mich 50, which we need not repeat. This modern tendency to take negligence cases away from juries at every opportunity is all the more curious in view of our often-announced rule that, upon such motions, all facts and circumstances and reasonable inferences must be viewed in the light most favorable to the plaintiff. See *Weisenberg* v. *Village of Beulah*, 352 Mich 172, citing cases.

What we seek, then, is not to make new law in this realm, but to return to the application of time-honored rules and authorities. We seek to serve notice that we ourselves take an unfavorable view of this developing new doctrine of "unfavorable view." We also seek to smite this growing tendency to take cases away from juries on capricious and arbitrary grounds, of which the trial court's action in this case perhaps stands as a classic example.

Other questions discussed in the briefs are not apt to arise on retrial in view of our determination that the question of contributory negligence is for a jury. Further, and in view of such determination, it is probable that plaintiff's theory of recovery will be voluntarily limited to the usual questions of negligence and freedom from contributory negligence. In these circumstances we decline to review and decide such additional questions.

The case is reversed and remanded for trial, with costs to plaintiff.

Smith, Black, and Edwards, JJ., concurred with Voelker, J.

DETHMERS, C. J. (*dissenting*). I am not in accord with Mr. Justice VOELKER's opinion for reversal. In disagreeing, I do not deem it essential to my position to differ with what he has written about the negligence or wrongdoing of defendant or to the effect that the Court ought not to take such a charitable view of defendant's testimony as to construe it in the light least favorable to plaintiff, although it is to be noted that this Court has heretofore held, consistently, that when plaintiff calls a defendant for cross-examination under the statute (CL 1948, § 617.66 [Stat Ann § 27.915]) plaintiff is bound by defendant's testimony which is not inherently incredible and not contradicted by other proofs. *Tel-Craft Civic Association* v. *City of Detroit*, 337 Mich 326; *Cherry River National Bank* v. *Wallace*, 329 Mich 384; *Hall* v. *Horak*, 329 Mich 16; *Dahlerup* v. *Grand Trunk Western R. Co.*, 319 Mich 96; *Schaupeter* v. *Schaupeter*, 317 Mich 84; *Brkal* v. *Pletcher*, 311 Mich 258; *In re Estate of Taylor*, 271 Mich 404; *Fleegar* v. *Consumers Power Co.*, 262 Mich 537; *Swank* v. *Croff*, 245 Mich 657. Neither is it necessary to my position in this case to invoke that portion of my much maligned opinion in *Schillinger* v. *Wyman*, 331 Mich 160, to which Mr. Justice VOELKER takes exception in this case, as did Mr. Justice BLACK in *Hett* v. *Duffy*, 346 Mich 456. That portion of my opinion in *Schillinger* was an attempted analysis of inconsistent previous decisions of this Court on the question of whether the benefit of a presumption of due care, accorded a plaintiff's decedent in cases of accidental injuries to him to which there were no eyewitnesses, should be denied him if the defendant was present at the accident, survived it and was available at trial. It was designed to show that this Court had held in the negative from *Adams* v. *Iron Cliffs Co.*, 78 Mich 271 (18 Am St Rep 441), to *Gembolis* v. *Rydeski*, 258 Mich 521, and then had executed an

about-face, answering in the affirmative, starting with *Foote* v. *Huelster,* 272 Mich 194, and *Buchel* v. *Williams,* 273 Mich 132, which were decided after trial but before this Court's consideration of *Collar* v. *Maycroft,* 274 Mich 376, in which the decisions in *Foote* and *Buchel* on the point in question were followed, to the considerable disappointment of the writer of this opinion, whose name appears in the official report of the *Collar Case* as one of the attorneys for the plaintiff. Having pointed to this change of position by this Court, with which this writer was never satisfied, decision in *Schillinger* was not planted on it. That is to say, it was not predicated on denial of the benefit of the presumption to plaintiff's decedent at the outset of the case because of defendant's availability as an eyewitness, but, rather, on the overcoming of that presumption of decedent's freedom from contributory negligence by proofs in the case of undisputed physical facts which affirmatively showed plaintiff's decedent therein to have been guilty of contributory negligence as a matter of law. It is on this same ground that I hold for affirmance in the instant case.

In so doing, I am not oblivious of the holding in *Breker* v. *Rosema,* 301 Mich 685 (141 ALR 867), that the presumption of due care in favor of a plaintiff's decedent in cases where there were no eyewitnesses, applies equally in the case of a plaintiff suffering from amnesia traceable to the accident as shown by clear and undisputed medical testimony. I shall proceed on the assumption that plaintiff was entitled to the benefit of the presumption here, despite the lack of medical testimony or any other direct proof connecting plaintiff's alleged amnesia to injuries sustained in the accident, although the propriety of such assumption, under this state of the proofs, is brought into considerable doubt by language in *Breker* v. *Rosema, supra; Thompson* v. *Southern*

*Michigan Transportation Co.,* 261 Mich 440; and *Gapske* v. *Hatch,* 347 Mich 648, 650.

I agree with Mr. Justice VOELKER, as this Court has long held, that for the purpose of passing on the trial court's directed verdict for defendant, we must view the evidence in the light most favorable to plaintiff. Such view cannot, for reasons stated in my opinion in *Van Gilder* v. *C. & E. Trucking Corp.,* 352 Mich 672, obviate the undisputed facts which constitute the only proofs in the record as to how the accident happened, namely: that defendant's automobile was travelling, after dark, at 20 miles per hour (plaintiff's declaration alleged 20 to 25 miles per hour), with headlights on, going north, on the east half of a north and south, 72-foot, paved street, without swerving and in a straight course, with its right side about 20 to 22 feet from the east curb line; that plaintiff entered upon the pavement from the east, at a point north of the nearest intersection and outside of any established crosswalk, to walk westerly across the street; that there were no parked automobiles nearby or other obstructions to prevent plaintiff from seeing defendant's oncoming automobile, the atmospheric condition being hazy but such that headlights of an automobile could be seen from 1 to 2 blocks distant; that plaintiff was thrown to the right of defendant's automobile so that after the accident she was lying about 10 feet west of the east curb; that there was small damage to the right fender, headlight and hood of defendant's automobile. It will be noted that this is not a case in which the plaintiff undertook to cross a street at an established crosswalk, under protection of a traffic control light or stop sign as in *Barron* v. *City of Detroit,* 348 Mich 213, and other, similar cases with which this Court recently has labored.

The undisputed physical facts, as just recounted, overcome any presumption of due care on plaintiff's

part and establish her guilt of contributory negligence as a matter of law. In *Champaign* v. *Detroit United Railway,* 181 Mich 672: *Molby* v. *Detroit United Railway,* 221 Mich 419; *Molda* v. *Clark,* 236 Mich 277; *Richman* v. *Detroit, G. H. & M. R. Co.,* 254 Mich 607; *DePotty* v. *City of Detroit,* 258 Mich 657: *Heintzelman* v. *Pennsylvania R. Co.,* 260 Mich 688: and *Rybarczyk* v. *New York Central R. Co..* 276 Mich 131, this Court held that when a plaintiff driver testified that he had looked and had seen no approaching vehicle such testimony was overcome by undisputed physical facts to the effect that plaintiff had had a clear and unobstructed view of the approaching vehicle and could have seen it in time to avoid the accident had he looked properly and given heed to what was there to be seen and that, hence, plaintiff was guilty of contributory negligence as a matter of law for failure to maintain a proper lookout, entitling defendant to a directed verdict.

In *Rushford-Surine* v. *Grand Trunk R. Co.,* 239 Mich 19, 24, 25, Mr. Justice FELLOWS, speaking for the majority of this Court, said:

"But my Brother McDONALD reasons that because there was no witness to the accident a presumption arises that they exercised due care and looked but did not see the train. Such a presumption could not make a stronger case than would testimony that they looked. Had there been such testimony in the case, it would not take the case to the jury where the undisputed physical facts establish that had they looked with the slightest degree of care they could not have failed to see the oncoming train. *Champaign* v. *Detroit United Railway,* 181 Mich 672; *Molby* v. *Detroit United Railway,* 221 Mich 419; *Bradley* v. *Davis,* 223 Mich 275; *Downey* v. *Pere Marquette R. Co.,* 230 Mich 243, 246. In the last cited case, it was said by Mr. Justice NELSON SHARPE, speaking for the Court:

" 'His testimony that he did look and did not see the locomotive is so opposed to the undisputed physi-

cal facts that it cannot be said to raise a question for a jury. He either did not look when first in a position to see down the track, or else after he saw the approaching train he concluded that he had time to cross. In either event, he was guilty of such contributory negligence as bars his recovery.' "

In *Thomas* v. *New York Central R. Co.,* 267 Mich 396, 398, this Court said:

"The presumption obtains unless the physical facts demonstrate that decedent failed to look for trains when she should have looked, failed to see what she should have seen, or having seen what a reasonably prudent person would have seen, failed to act upon it with due care."

"Prima facie presumption that decedent motorist, whose car was struck on highway crossing railroad by engine of a passenger train, was exercising due care is not applied where known facts prevent it as where decedent had unobstructed view of approach of train for upward of a mile." *Tomczyk* v. *Detroit, G. H. & M. Ry.* (syllabus), 267 Mich 474.

To the same effect, see *Gillett* v. *Michigan United Traction Co.,* 205 Mich 410, and 2 cases therein followed, namely, *Kwiotkowski* v. *Grand Trunk R. Co.,* 70 Mich 549; and *Guntermann* v. *Michigan Central R. Co.,* 168 Mich 37; also, *Elrich* v. *Schwaderer,* 251 Mich 33; *Waterstradt* v. *Lanyon Dock Co.,* 304 Mich 437; and *Pomeroy* v. *Dykema,* 256 Mich 100. All of these cases hold, in effect, that the presumption of due care on the part of a plaintiff's decedent is overcome by undisputed proofs of physical facts from which it can only be concluded that decedent could have seen defendant's vehicle in time to avert an accident and that, therefore, he either negligently failed to look and see or to give heed to what was there to be seen and to act accordingly to avoid the accident as he could have done. This is in accord

with the concurring opinions of Mr. Justice Smith and Mr. Justice Black in *Hett* v. *Duffy, supra.*

In the instant case, the undisputed physical facts are that plaintiff could have seen defendant's automobile coming in sufficient time to have avoided the collision between herself and the right front of the automobile. The inescapable conclusion is that she either did not look or see or failed to give proper heed to what she saw or could have seen had she looked and that this was a proximate cause of the accident. This is supported by the testimony of the police officer that, on the same evening on which the accident occurred, plaintiff told him that she had not seen defendant's automobile approaching. This testimony stands undisputed. I do not agree that the rule that we view the evidence in the light most favorable to plaintiff requires elimination of this undisputed testimony of plaintiff's own witness from our consideration, nor that it is explained out of the case by plaintiff's testimony that, at the time of trial, she could not remember the accident or attending circumstances.

The averments of plaintiff's declaration concerning defendant's driving while intoxicated do not make out a case of nuisance (*State of New Jersey* v. *Rodgers,* 91 NJL 212 [102 A 433]). Such conduct having its origin in negligence, this claim is in the same situation as the one planted on negligence, namely, that it is defeated by plaintiff's contributory negligence. *Denny* v. *Garavaglia,* 333 Mich 317.

The judgment should be affirmed, with costs to defendant.

Carr and Kelly, JJ., concurred with Dethmers, C. J.

Kavanagh, J., took no part in the decision of this case.