### MCKINNEY *v.* LARGES.

1. APPEAL AND ERROR—MOTION FOR DIRECTED VERDICT—EVIDENCE.
   The proofs adduced must be viewed in the light most favorable to plaintiffs in determining whether or not the trial judge erred in granting motions for directed verdicts, since the trial court must determine whether or not 'there are questions of fact for the jury to decide.

2. AUTOMOBILES — NEGLIGENCE — EVIDENCE — SLIPPERY PAVEMENT — SPEED — CONTROL OF VEHICLES — PROXIMATE CAUSE.
   Evidence presented by plaintiff in action against taxicab owner and operator and owner and operator of colliding car as to proximate cause of collision resulting in injuries to herself and son *held,* sufficient to submit case to jury, where record shows that accident occurred in mid-February about 9:30 in the evening on a slippery pavement, that taxicab was driven at speed of 35 to 40 miles an hour notwithstanding plaintiff warned as to excessive speed for the conditions, and other defendant's oncoming car was slipping and zigzagging for 3 or 4 car lengths before collision occurred.

CARR, C. J., and DETHMERS and KELLY, JJ., dissenting.

Appeal from Wayne; Fitzgerald (Neal), J. Submitted April 6, 1962. (Docket Nos. 39, 40, Calendar Nos. 48,888, 48,889.) Decided September 7, 1962.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 886.
[2] 5A Am Jur, Automobiles and Highway Traffic §§ 1017, 1029.

Case by Bertha Lee McKinney against Richard M. Larges, Bobby Coleman, Jr., and Harold E. Bouchard for personal injuries sustained in collision of taxicab and automobile. Similar action by Dwight McKinney, by next friend. Cases consolidated for trial and on appeal. Directed verdicts and judgments for defendants. Plaintiffs appeal. Reversed and remanded.

*Bledsoe, Ford & Bledsoe (Harold E. Bledsoe,* of counsel), for plaintiffs.

*Vandeveer, Haggerty, Doelle, Garzia, Tonkin & Kerr,* for defendants Larges and Coleman.

*Butler & Martin (Kenneth F. Martin,* of counsel), for defendant Bouchard.

DETHMERS, J. (*dissenting*). Plaintiffs appeal from directed verdicts of no cause for action entered at the conclusion of their proofs in these 2 cases, consolidated for trial and appeal. Plaintiffs' claims arise out of injuries sustained when the taxicab in which they were passengers, owned by defendant Larges and driven by his employee, defendant Coleman, collided with an automobile owned and driven by defendant Bouchard. The court stated, as reason for its direction of verdicts, that plaintiffs had failed to show any negligence on defendants' part which was a proximate cause of the collision.

Plaintiffs' brief, for its statement of facts, states:

"The pertinent testimony of the plaintiffs relating to the questions of negligence and proximate cause was as follows. (Page references are to transcript.)

"Bertha McKinney—direct examination:

"'. . . Along about February 16, 1957 . . . (Page 8) Did you board a taxicab? Yes, I did . . . It was on Chene. . . . In the City of Detroit?

Yes . . . To what destination . . . ? 973 East
Fort street. . . . about 9:30 or a quarter of ten
. . . in the evening. (Page 9) . . . What
direction did he travel? . . . towards downtown.
. . . Southerly? Yes. . . . What happened?
. . . As I got in I cautioned him about the weather
and conditions (Page 10). It was snowing and icy,
very slippery. (Page 11) I gave him (cab driver)
my address where I was going, and I asked him to
be cautious, because it was slippery and bad outside.
. . . He taken off pretty fast. . . . He said I
didn't have anything to worry about, that they had
plenty of insurance. (Page 13) . . . at the inter-
section of Chene and Watson what happened?
There was an accident. . . . the 2 cars collided.
. . . Did you see it? (other car). Yes . . . it
was coming . . . from towards the river . . .
from towards downtown . . . Northerly . . . ?
Yes . . . (Page 14) . . . How far would you
say it was away when you first saw it? About 3 or
4 car lengths apart. And as a result of having ob-
served the speeds at which cars were traveling, can
you give in your own estimation about the speed
that the car was traveling in which you were riding?
Between the miles of 35 or 40 miles an hour. . . .
Was that car traveling at that speed when you saw
this car 3 or 4 car lengths away? (Page 15) Yes
it was. Before the accident? Yes . . . imme-
diately before this accident did you say anything to
the driver . . . ? I was talking about the weather
being slippery and bad outside . . . I screamed
and I yelled "stop". . . . Was your boy in the
car with you? Yes, he was . . . He was seated
on the right side. What was it that made you
scream? The car was going this way. (waves her
right hand in zigzag fashion). . . . Do you mean
to indicate by that that the car started slipping?
Yes, it did. Is that when you screamed? (Page 16)
Yes it was. When the car started slipping and you
screamed, how far was the car that was approaching
in a northerly direction . . . ? . . . approxi-

mately about 3 car lengths apart. And did these 2 cars then come together? Yes. I don't remember what happened after. There was a crash? Yes. . . . And what was the next thing you knew? When I was in the hospital.'

"Bertha McKinney, examined by Mr. Tonkin (Page 24):

" 'What did you see this other car do? . . . I seen the lights of it. . . . Were you sitting behind the driver? Yes.'

"Bertha McKinney—Redirect. (Page 110):

" '. . . as a result of this accident . . . what happened to you . . . ? I had a fractured arm, a broken nose, and my teeth on the lower bottom was cracked. I had a big lump in the back of my head. My back was all bruised, and across my chest. . . . Was there an open wound? Yes there was.'

"Direct Examination of Dwight McKinney— (Page 35):

" 'Now were you about February 15th (16th) in an automobile on the streets of the city of Detroit? Yes. With your mother? Yes, sir. . . . What street . . . ? It was Chene. . . . An accident happened. . . . Where were you sitting in that car? I was sitting on the side . . . on the opposite seat of the driver, and looking out of the window. Did you see this car that collided with the car in which you were driving? Well, I had a short glance. I looked in front, and then I looked back out the window. I didn't know what had happened until the accident had occurred (Page 36). Did you hear your mother scream? Yes, sir. You didn't see the accident? You didn't see the cars come together? No, sir . . . Did anything happen to you? Yes, sir, I got both of my front teeth broken out.' "

In its opinion, denying plaintiffs' motion for new trial, the court said:

"All of the plaintiffs' testimony with reference to the happening of the accident is contained between pages 13 and 16 of the trial record. The testimony

indicated that the streets were very icy and slippery. The plaintiff Bertha McKinney testified that the driver of the cab in which she was riding was driving between 35 and 40 miles an hour. The only statement that she made with regard to the car that was approaching, and with which they collided, was that she saw it coming in a northerly direction toward her, and that it was slipping and zigzagging. There was no testimony whatsoever that the approaching car was on any other than its own side of the street. There was no testimony to indicate that her driver was not in his own proper lane. Nothing was said concerning any point of contact, or that would indicate in any way where the collision occurred. There was nothing in the testimony from which a jury could decide whether the speed of the car in which the plaintiffs were riding had anything to do with the cause of the accident. There was no evidence that the approaching car turned or skidded in front of the plaintiffs' driver, or that their driver turned into his path. There was no testimony of any kind to indicate that either car was ever anyplace but on its own side of the street. The indicated slipping or zigzagging by the other car was never detailed. There was nothing to indicate what caused it or where it took place, and therefore it cannot be evidence of negligence. The speed of that approaching vehicle was never testified to. There is, in summation, absolutely nothing in this record to indicate how or why this accident happened. The jury would have been faced with the problem of determining which of these drivers was to blame. Without a pure unsupported guess, they would be unable to decide this question. They would be in equally as bad a position if they were to attempt to determine that both drivers were to blame, because of the complete absence of facts in the record.

"Even if the plaintiffs' driver was going 40 miles an hour, his speed would not be a proximate cause of the accident if the other party had suddenly turned in front of him from, let us say, a distance

of 10 feet. Under the conditions then and there existing, there would have been a collision regardless of the speed at which he was driving, and the speed therefore would not have been a proximate cause of the accident.

"In short, the court directed a verdict because, under any test, the plaintiffs failed to establish a case. There was no direct evidence as to the cause of the accident or its happening, nor were there any facts from which legitimate inferences could be drawn that would indicate whether one or the other, or both, were to blame.

"In the opinion of the court, the plaintiffs' attorney was so anxious to prove all of the damages he possibly could, that he neglected the prime essential of establishing negligence. He was given an opportunity to recall his principal witness, Bertha McKinney, but he did not even then produce any further testimony on the question of negligence. After extensive argument on the motion for a directed verdict, he did not ask to reopen his case for that purpose. It, therefore, must be assumed that he had no testimony other than that already in the record; and which was insufficient, in the opinion of the court, to make a question for the jury.

"The motions will be denied."

The trial court's statement concerning what plaintiffs' proofs showed or failed to show is fully borne out by the record. We agree with its conclusions that they failed to establish how, or where on the street the accident happened, to show of what specific negligence, if any, any defendant was guilty, or anything that any one of them did or failed to do that was a proximate cause of the collision.

The judgments should be affirmed. Costs to defendants.

CARR, C. J., and KELLY, J., concurred with DETHMERS, J.

KAVANAGH, J. The facts with reference to the above entitled cases are set forth in the opinion of Justice DETHMERS. Plaintiffs appeal from directed verdicts of no cause for action entered at the conclusion of their proofs in these 2 cases, consolidated for trial and appeal.

The trial court's reason for granting the directed verdicts at the close of plaintiffs' proofs was that plaintiffs had failed to show any negligence on defendants' part which was a proximate cause of the collision.

In passing upon whether or not the trial judge erred in granting the motions for directed verdicts for the reason given, we must view the proofs—as he should have—in the light most favorable to plaintiffs. *Shaw* v. *Bashore,* 353 Mich 31; *DeLuca* v. *Wonnacott,* 358 Mich 319. The instant case may be one in which, as the trial court indicated, plaintiffs' attorneys did not prove all the facts from which legitimate inferences could be drawn that would indicate defendants were negligent and that their negligence was a proximate cause of the accident. We and the trial judge are not to determine whether we could have done better, but rather to determine from the facts shown whether or not, on favorable view, there were questions of fact presented for the jury to decide. We shall proceed to examine the evidence to determine if this is true.

The proofs disclose and plaintiffs' pleadings allege that plaintiffs were passengers for hire in defendants' common carrier taxicab; that the cab was driven at excessive speed on an icy, snowy, slippery pavement in such a manner that the defendant cab driver was unable to control the vehicle and thus avoid a collision with defendant Bouchard's automobile, which was seen by plaintiff Bertha Lee Mc-Kinney some 3 or 4 car lengths away skidding and

slipping on the icy pavement. Defendant Bouchard admits the skidding in the pretrial statement.

Viewed in the most favorable light, the proofs show the following:

Plaintiff Bertha Lee McKinney and her son Dwight boarded the cab on Chene street and asked the driver to take them to an address on East Fort street. It was snowing and the streets were icy and slippery. The cab took off at a fast speed and maintained a speed at from 35 to 40 miles per hour. Bertha McKinney warned the driver of the excessive speed. He replied that she didn't have anything to worry about, that they had plenty of insurance, and continued to drive at a high speed. As they approached Chene and Watson streets Bertha McKinney observed the lights of defendant Bouchard's car 3 or 4 car lengths away. The car was skidding. She yelled and screamed. The car and cab collided. Serious injuries resulted to both Bertha McKinney and her son Dwight McKinney.

On favorable view, we think the proofs at the time the motions for directed verdicts were made showed the cab driver was proceeding 35 to 40 miles per hour along a busy street which was covered with snow and was icy and slippery, and that he continued to drive at such a high rate of speed even after a warning from plaintiff Bertha McKinney.

It is both unnecessary and improper for us to say whether or not this constituted negligence on the part of the driver of the cab. We believe we have fulfilled our judicial function when we say, as we do, that we feel reasonable people might well disagree on that question. We suggest that jurors might infer that the defendant cab driver was driving at an excessive rate of speed on an icy, slippery street and that his speed, under the conditions prevailing, was such that he was unable to turn out

to the right and avoid the oncoming skidding car of
defendant Bouchard.

We suggest that under the same unusual condi-
tions—the icy, slippery, snowy street—if the de-
fendant cab driver had not been traveling at such a
high rate of speed he might have been able to
stop or avoid the accident, and that his failure to
drive at a rate of speed in keeping with the pre-
vailing condition of the street (and particularly
after the warning of Bertha McKinney) might be
negligence which was a proximate cause of the acci-
dent.

It is apparent that defendant Bouchard was also
driving at a high rate of speed for the existing con-
ditions and that he was skidding and sliding side-
ways in the direction of defendants' cab. It is a fair
inference that Bouchard's car was over on the cab's
side of the street when viewed by Mrs. McKinney.
Why would she scream if such were not the case?
We do not suggest that this necessarily constitutes
proof of negligence which was a proximate cause of
the accident. But again we point out that reason-
able minds might differ as to whether or not a proper
inference would be that Bouchard was driving too
fast for conditions and, therefore, might be guilty
of negligence which was a proximate cause of the
accident.

We cannot agree with the finding of the trial court
nor with Justice Dethmers' conclusion that plaintiffs
failed to establish of what specific negligence, if any,
defendants were guilty; or that plaintiffs failed to
show defendants had been guilty of any negligence
that was a proximate cause of the injuries. We con-
clude, under the favorable view, that facts were sub-
mitted from which a jury might so find.

We also conclude that a jury question as to negli-
gence and proximate cause has been shown and that
the trial court's directed verdicts of no cause for

action must be, and are, reversed and the matter remanded for full trial.

Plaintiffs shall have costs.

BLACK, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred with KAVANAGH, J.